# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3613

_____

| | | |
|---|---|---|
| City of Clarkson Valley, a Missouri Municipal Corporation; Scott Douglass, in his official capacity as Mayor of Clarkson Valley, | * * * * * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| Norman Y. Mineta, in his official capacity as Secretary of Transportation of the United States; Peter Rahn,[1] in his official capacity as Director of the Missouri Department of Transportation for the State of Missouri, | * * * * * * * | |
| Appellees. | * | |

_____

Submitted: April 12, 2007
Filed: July 19, 2007

_____

Before WOLLMAN, BEAM, and COLLOTON, Circuit Judges.

_____

BEAM, Circuit Judge.

---

[1]Peter Rahn, Director of the Missouri Department of Transportation (MoDOT) replaced Dave Snider, the Interim Director of MoDOT.

The City of Clarkson Valley and Scott Douglass, in his official capacity as Mayor of Clarkson Valley (collectively "the City"), appeal the district court's grant of summary judgment in favor of defendants Mineta and Rahn (collectively "the United States"). Because the district court did not properly analyze the City's standing to sue the United States, we remand the case for such consideration.

## I.     BACKGROUND

In the mid-1980's the Missouri Department of Transportation (MoDOT) decided to widen a portion of Clarkson Road to handle the higher volumes of then-existing and forecasted traffic.[2]  As part of this process, the Missouri Highway and Transportation Department submitted a Final Environmental Assessment (FEA) to the Federal Highway Administration (FHWA) in 1986.  The FHWA reviewed this document and accepted it as a FONSI, meaning "a document by a Federal agency briefly presenting the reasons why an action . . . will not have a significant effect on the human environment and for which an environmental impact statement therefore will not be prepared."  40 C.F.R. § 1508.13.

The 1986 FEA determined that noise levels along Clarkson Road would increase and that a noise study should be performed.  Though the study was not done, the widening began in the mid-1990's and was completed in 2000.  Toward the end of the project, MoDOT personnel, realizing that the 1986 FEA called for a noise study which had not been done, requested a study.  The study revealed that many locations along Clarkson Road met the criteria for noise abatement measures, including sound walls.

---

[2]The facts we recite are adopted from the district court's summary judgment order.

## II.    PROCEDURAL HISTORY

Attempting to prevent the sound wall construction, the City filed suit under the Administrative Procedures Act (APA) and 28 U.S.C. § 1331, alleging that the United States insufficiently considered the economic and environmental impact of the construction of the sound wall by failing to comply with the procedural requirements of the National Environmental Policy Act (NEPA). Subsequently, in 2005, the United States issued the Final Supplemental Environmental Assessment (FSEA) and a new FONSI. By stipulation, the City's complaint was then amended to make this 2005 FSEA the final agency decision on review before the district court. The City maintained that despite the 2005 FSEA, the United States still had not complied with NEPA. The City sought an order requiring the preparation of an Environmental Impact Statement (EIS).

The United States filed a motion to dismiss, alleging that the City lacked constitutional standing because there was no case or controversy; that there was insufficient injury to invoke procedural review under the APA, and that the City did not fall within the class of persons protected by NEPA. The district court "den[ied] the motion as premature" and noted that "[t]he parties will be allowed to develop the record" and that the court would "decide the issue of standing when the facts of this case are properly before" the court.

The United States subsequently filed a motion for summary judgment, arguing that it had complied with NEPA by, among other actions, issuing a FONSI, which (arguably) obviated the need for the preparation of an EIS. In its memorandum of support, the United States reminded the court of the need to determine whether it had jurisdiction before addressing the merits of the motion. Further, the defendants reminded the court that they "contend that Plaintiffs lack standing, and therefore renew their [prior] motion and incorporate that motion and the memorandum in support herein by reference."

In its summary judgment order, the district court included the following footnote:

> The United States previously filed a motion to dismiss under Rule 12 for lack of standing. I denied that motion because the factual record was insufficient to determine whether Clarkson Valley met the requirements for Constitutional [sic] standing. The United States states in its memorandum in support of its motion for summary judgment that it renews its motion to dismiss for lack of standing. The memorandum, however, does not contain any citations to the record in support of its argument that Clarkson Valley lacks standing.

The district court proceeded to grant summary judgment in favor of the United States, which the City appeals.

## III.  DISCUSSION

It is well established that standing is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit. See, e.g., McCarney v. Ford Motor Co., 657 F.2d 230, 233 (8th Cir. 1981). We have stated numerous times that "standing is a 'threshold inquiry' that 'eschews evaluation on the merits.'" Id. (quoting Coal. for the Env't v. Volpe, 504 F.2d 156, 168 (8th Cir. 1974)).

This "threshold inquiry" normally requires an evaluation of (1) injury, (2) causation, and (3) redressability. See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). However, in cases where, as here, the plaintiffs assert a procedural injury, they "can assert that right without meeting all the normal standards for redressability and immediacy," id. at 572 n.7, "so long as the procedures in question are designed to protect some threatened concrete interest of [theirs] that is the ultimate basis of [their] standing." Id. at 573 n.8.  When standing–and thus a court's jurisdiction–is challenged, "[t]he party invoking federal jurisdiction bears the

burden of establishing these elements." Id. at 561. Because the requirements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." Id. Thus, in response to a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice, for . . . we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Id. (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990)) (alteration in original). In response to a motion for summary judgment, "the plaintiff[s] can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." Id. (quotations omitted).

Here, when the United States filed its motion to dismiss, the district court refrained from ruling on the motion, believing that the motion was premature because the facts were not yet properly before the court. As Defenders of Wildlife explains, however, when a motion to dismiss is made on standing grounds the standing inquiry must, as a prerequisite, be done in light of the factual allegations of the pleadings. Id.

While the district court did not initially rule on the motion to dismiss for lack of jurisdiction, it did suggest that it would reconsider the matter at a later date. However, when the United States renewed and incorporated its motion to dismiss along with its summary judgment motion, the district court again declined to determine whether it had jurisdiction. The court refused to rule because, according to the court, the United States' "memorandum . . . does not contain any citations to the record in support of its argument that Clarkson Valley lacks standing." Again, Defenders of Wildlife dictates that it is the party invoking federal jurisdiction–in this case, the City–that bears the burden of proving the elements of standing as "an indispensable part of the plaintiff's case." Id.

Because the district court never decided whether it had jurisdiction to proceed, we remand this case for a proper standing analysis. The court will have to determine whether the United States' discussion of standing in its memorandum of support for summary judgment was a "renew[ed]" motion to dismiss or whether that rationale was "incorporate[d]" into the motion for summary judgment, because this will determine at which "successive stage[] of the litigation" the motion was made and thus "the manner and degree of evidence required." Id. Once that determination is made, the burden is placed on the City, as the party invoking federal jurisdiction, to prove it has standing to bring the suit. As part of its proof, the City, suing under the APA, must not only show the injury required in Defenders of Wildlife, see id. at 573 n.8, but "must also show [that] the injury complained of falls within the zone of interests sought to be protected by the statutory provision[s]" of NEPA. Rosebud Sioux Tribe v. McDivitt, 286 F.3d 1031, 1036 (8th Cir. 2002).

## IV.  CONCLUSION

We remand the case to the district court to decide whether the City has standing. Should the City lack standing, the case must be dismissed for lack of jurisdiction. If the district court determines that the City carried its burden, then the court's previous determination on the merits may be reentered.

_____