# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1099
_____

United States of America, ex rel. Michael Dunn

*Plaintiff - Appellant*

v.

North Memorial Health Care; North Memorial Medical Center

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 24, 2013
Filed: January 9, 2014

_____

Before LOKEN, GRUENDER, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Michael Dunn brought a *qui tam* action against North Memorial Health Care and North Memorial Medical Center (collectively referred to as North Memorial),[1]

_____

[1]North Memorial Health Care is a medical center and full-service health care provider with its primary hospital, North Memorial Medical Center, located in Robbinsdale, Minnesota.

pursuant to the False Claims Act (FCA), 31 U.S.C. § 3729, et seq. Dunn alleged that North Memorial knowingly submitted fraudulent claims to the government seeking payment for cardiac and pulmonary rehabilitation services that did not comply with Medicare regulations. Dunn claimed that as a result, the United States has erroneously paid North Memorial approximately two million dollars. North Memorial moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). The district court[2] dismissed the complaint under Rule 12(b)(6). We affirm the dismissal on the alternative ground that Dunn's complaint does not meet the requirements of Rule 9(b).

I.

The Medicare program was established by the Social Security Act of 1965 to assist qualifying patients with the payment of their medical expenses. The program authorizes payment for various services, including "hospital . . . services incident to physicians' services rendered to outpatients." 42 U.S.C. § 1395x(s)(2)(B); see also 42 U.S.C. § 1395k(a) (authorizing payment to or on the behalf of qualified individuals for "medical and other health services"). The program particularly requires outpatient cardiac and pulmonary rehabilitation services to be furnished "[u]nder the direct supervision . . . of a physician or nonphysician practitioner." 42 C.F.R. § 410.27(a)(1)(iv).[3] In order to receive reimbursement for services rendered, health care providers must comply with Medicare regulations and submit reimbursement claims forms to the Center for Medicare and Medicaid Services

---

[2]The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota.

[3]Both parties agree that this provision governed North Memorial's conduct prior to the 2010 enactment of 42 C.F.R. §§ 410.47 (concerning conditions of coverage for pulmonary rehabilitation programs) and 410.49 (concerning coverage for cardiac rehabilitation programs).

(CMS), the agency which administers and regulates the Medicare program. North Memorial participates in the Medicare program as a health care provider and seeks reimbursement for outpatient cardiac and pulmonary rehabilitation services it provides at its hospital in Robbinsdale.

From October 1996 through August 2008, Dunn was the Administrator for Cardiovascular Consultants, an independent cardiology physician group providing services at North Memorial. In 2010, Dunn brought a *qui tam* action against North Memorial, alleging that, "throughout the time [he] worked for CVC and North Memorial, he observed that North Memorial was not operating its cardiac and pulmonary rehabilitation programs in accordance with the Federal Medicare Program." Specifically, Dunn claimed that North Memorial did not provide any physician supervision of the programs as required under the Medicare statutes and regulations, but rather staffed the programs solely with non-physicians.[4] Dunn further claimed that the forms submitted to CMS falsely identified four physicians as the supervising physicians, when in fact, none of the listed physicians ever provided any supervision to the cardiac and pulmonary rehabilitation programs.

Dunn alleged that despite his informing North Memorial officials of their noncompliance with the supervision requirement and fraudulent billing practices, North Memorial continued to submit misleading claims, causing "thousands of instances of fraudulent billing" from 1996 until the present. As a result, according to Dunn, the government has wrongfully paid North Memorial approximately two million dollars.

---

[4]Although the Medical Director of the program is a physician, Dunn points out that the director was generally unavailable due to two half-day blocks full of patient care responsibilities assigned every day at other facilities.

The district court granted North Memorial's motion to dismiss pursuant to Rule 12(b)(6), concluding that the complaint failed to state a claim for relief. Dunn appeals, and we affirm.

## II.

When affirming the district court's dismissal, we need not rely on the same premise guiding the district court's conclusion, but may affirm "on any basis supported by the record." Phipps v. FDIC, 417 F.3d 1006, 1010 (8th Cir. 2005). After reviewing the record, we conclude that Dunn failed to plead fraud with sufficient particularity as required under Rule 9(b).

"The FCA is not concerned with regulatory noncompliance. Rather, it serves a more specific function, protecting the federal fisc by imposing severe penalties on those whose false or fraudulent claims cause the government to pay money." United States ex rel. Vigil v. Nelnet, Inc., 639 F.3d 791, 795-96 (8th Cir. 2011); see also 31 U.S.C. § 3729(a)(1)(A)-(B). Accordingly, "[t]he FCA generally 'attaches liability, not to the underlying fraudulent activity, but to the claim for payment.'" In re Baycol Prods. Litig., 732 F.3d 869, 875 (8th Cir. 2013) (quoting Costner v. URS Consultants, Inc., 153 F.3d 667, 677 (8th Cir. 1998). "Because the FCA is an anti-fraud statute, complaints alleging violations of the FCA must comply with Rule 9(b)." United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006). Rule 9(b) requires that a party "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Thus, demanding a higher degree of notice, Rule 9(b) requires that the complaint plead "such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." Joshi, 441 F.3d at 556.

Dunn's complaint misses the mark. Although "neither this court nor Rule 9(b) requires [Dunn] to allege specific details of *every* alleged fraudulent claim forming the basis of [his] complaint," id. at 557, Dunn may not simply rely on the generalized conclusion that North Memorial engaged in noncompliant conduct, and in doing so, caused thousands of instances of fraudulent billing. Nor may Dunn rely on the broad allegation that every claim submitted from 1996 until the present is false in order to satisfy the particularity requirement. See id. (requiring the relator to state more than a "conclusory or generalized allegation[]"). Instead, Dunn "must provide some representative examples of [North Memorial's] fraudulent conduct, specifying the time, place, and content of their acts and the identity of the actors." Id. (holding that the relator's complaint, which alleged that defendants engaged in a systematic practice of submitting fraudulent claims over a sixteen-year period, failed to satisfy Rule 9(b) because it was "void of a single, specific instance of fraud, much less any representative examples"); see also United States ex rel. Ketroser v. Mayo Found., 729 F.3d 825, 829 (8th Cir. 2013) (concluding that the relator's failure to "put in the record even one example of a claim [the defendant] submitted to a Medicare paying agent" violated "the well-established principle that a relator who alleges a systematic practice of submitting fraudulent claims . . . must provide some representative examples of the alleged fraudulent conduct" (internal quotation marks omitted)).

Although Dunn identified the North Memorial officials involved in the alleged fraudulent billing and provided the names of the physicians who purportedly never supervised the rehabilitation services, Dunn's complaint fails to identify even one example of an actual false claim submitted to CMS for reimbursement. Thus, Dunn's complaint is insufficient to state a claim for relief for purposes of the FCA.

## III.

For these reasons, the judgment of the district court is affirmed.

_____