# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2450
_____

Christian Labor Association; Kaski, Inc.; Nordic Group, Inc.; Roen Salvage Co.;
Luke Krhin

*Plaintiffs - Appellants*

v.

City of Duluth; City of Cloquet; City of Two Harbors; Western Lake Superior
Sanitary District; Duluth Building and Construction Trades Council

*Defendants - Appellees*

------------------------------

National Right to Work Legal Defense Foundation, Inc.

*Amicus on Behalf of Appellant(s)*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 23, 2024
Filed: July 10, 2025
_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

In several Minnesota cities, only members of a pre-approved union can work on municipal construction jobs. Although multiple contractors, a carpenter, and a union object to this requirement, none have standing to challenge it on First Amendment grounds.

## I.

The plaintiffs fall into three categories. First, the contractors: Kaski, Inc.; Nordic Group, Inc.; and Roen Salvage Co. Second, a carpenter: Luke Krhin, who works for Nordic. Third, a union: the Christian Labor Association, which has a local chapter in Minnesota that counts Krhin as a member.

The contractors face a difficult choice when bidding on projects in cities like Duluth, Cloquet, and Two Harbors. Winners must follow "project[-]labor agreements," which require sourcing workers from pre-approved unions. At one point, the municipalities also had "union[-]security provisions" that required all eligible workers to join one. Although they have lifted the latter requirement, the contractors and Krhin allege that the project-labor agreements have caused them to miss out on lucrative work.

Rather than comply, the contractors have refused to bid on projects in those cities. They also decided to sue, alleging that the project-labor and union-security provisions violate the First Amendment. *Cf. Janus v. Am. Fed. of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878, 916 (2018) (holding that the government may not force *its own* employees to "support [a] union irrespective of whether they share its views").

The district court disagreed. First, it determined that none of the plaintiffs—not the contractors, Krhin, or the Christian Labor Association—had standing to sue. Second, it concluded that, even if they did, they could not succeed on their First Amendment claim. They challenge both points on appeal.

-2-

## II.

We start and end with standing, a "jurisdictional requirement." *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662 (2019). Two varieties exist. The first comes from Article III's case-or-controversy requirement. *See* U.S. Const. art. III., § 2, cl. 1. Satisfying it takes (1) "an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Together, they ensure a "'personal stake' in the case." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted).

The second, prudential standing, is a collection of "judicially self-imposed limits on the exercise of federal jurisdiction." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citation omitted). The most common is the general prohibition on asserting the "legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Usually, when plaintiffs "fail[] to establish [prudential] standing" for First Amendment claims, it is because they are asserting someone else's right to speak or associate, not their own. *Novotny v. Tripp County*, 664 F.3d 1173, 1177 (8th Cir. 2011).

The "burden of establishing" standing here falls upon the plaintiffs, who are the ones seeking to "invok[e] federal jurisdiction." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). At the summary-judgment stage, an "affidavit or other evidence" must set out "specific facts" showing why it exists. *Young Am.'s Found. v. Kaler*, 14 F.4th 879, 888 (8th Cir. 2021) (quoting *Lujan*, 504 U.S. at 561). If either Article III or prudential standing is absent, "the appropriate remedy is to dismiss [the case] without prejudice." *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1033 (8th Cir. 2014); *see Kaler*, 14 F.4th at 891 (vacating a "grant of summary judgment" and remanding "with instructions to dismiss" after concluding that the plaintiffs "lack[ed] standing"). No standing, no decision on the merits. *See City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007).

A.

Up first are the contractors who have passed on municipal projects with project-labor agreements.  There is little doubt they have alleged an injury, which gives rise to Article III standing when it is directly traceable to the challenged action. *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995) (noting that plaintiffs can be injured when they are "prevent[ed] . . . from competing on an equal footing" in "bidd[ing] on a [g]overnment contract" (citation omitted)).

The problem is that "the relevant constitutional claims," as they candidly admit, "belong to their employees," not to them.  The contractors, after all, do not have to join a union, which means they have no First Amendment speech or associational claims of their own.  *Cf. Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (observing that the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests"); *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (holding that compelled speech implicates the First Amendment).  Nor do they have a way around the third-party-standing prohibition.[1]

An exception exists for facial overbreadth challenges, but no one raises any. *See Republican Party of Minn. v. Klobuchar*, 381 F.3d 785, 792 (8th Cir. 2004); *see also Sisney v. Kaemingk*, 15 F.4th 1181, 1202 (8th Cir. 2021) (Stras, J., concurring in part and dissenting in part).  To the extent they try to rely on their close relationship with their employees, missing is "a hindrance to the [latter's] ability to protect [their] own interests."  *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (citation omitted).  Nothing stands in their way, which Krhin's participation in this case confirms.  *See id.* at 132 (recognizing that a hindrance is "disprove[n]" where the party, or one similarly situated, *has* attempted to vindicate his own rights).

---

[1]Given this conclusion, we need not decide whether the cities' decision to remove the union-security provisions moots the challenges to them.  *See Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 4 (2023) (observing that "we can address jurisdictional issues in any order we choose").

-4-

Seeking a declaratory judgment does not change the analysis. Under the Declaratory Judgment Act, courts may "declare . . . rights and other legal relations," but only for the "*interested party* seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). Any decision here, in other words, could only declare the rights of the "interested party"—the employees—who object to joining one of the preapproved unions. *Id.* Their employers, on the other hand, have no rights of their own that need declaring. Declaratory judgment or not, only the employees can sue in federal court. *See Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 772 n.2 (7th Cir. 2013) (concluding that the Declaratory Judgment Act does *not* "modif[y] the prudential-standing rule prohibiting litigants from asserting the rights of others").

B.

Krhin is the only plaintiff who might qualify. He does not want to join a pre-approved union because he opposes their message. Turns out, however, that he has no obligation to join one.

The project-labor agreements exempt supervisors, whom the National Labor Relations Act defines as those with the authority to "direct" other employees or to "effectively . . . recommend" that the employer "hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline" them. 29 U.S.C. § 152(11). To qualify, the authority granted must "require[] . . . independent judgment," not "merely" be of a "routine or clerical nature." *Id.* In short, it all comes down to the "role" someone plays. *NLRB v. Mo. Red Quarries, Inc.*, 853 F.3d 920, 927 (8th Cir. 2017).

1.

Krhin's deposition testimony shows why he qualifies as a supervisor. More than half the time, he "direct[s]" other employees as a "site superintendent" who

"manage[s] crews, . . . on-site production and building, [and] other trades and subcontractors coming in." *See Schnuck Mkts., Inc. v. NLRB*, 961 F.2d 700, 705 (8th Cir. 1992) (observing that "the power to reassign employees from department to department, discipline and monitor the floor crew and employees, [and] send employees home if work [is] slow" suggests supervisor status). Even when he has his "tools on," he still "operate[s] more as a foreman" by "direct[ing] projects [and] making sure things are flowing properly [and] being done correctly." He also does something no regular employee would do, which is reviewing bids to see what others will "be doing on [a] project" and "estimat[ing] [the] hours required for" it. Then, once a project starts, he "ha[s] the authority to . . . purchase . . . materials" without someone else having to approve the order first.

Krhin's duties also extend to hiring and firing decisions. *See* 29 U.S.C. § 152(11); *Schnuck*, 961 F.2d at 703 (recognizing that authority over any one action on the list is enough). According to him, he is the "main[]" person present at interviews, with owners in attendance only "when . . . available," which is why they "typically take [his] advice" on whom to hire. *See NLRB v. Res-Care, Inc.*, 705 F.2d 1461, 1467 (7th Cir. 1983) (concluding that "an employee whose responsibility it is to make [personnel] recommendations, and whose recommendations therefore carry a special weight with the employer and are normally or at least commonly followed, is a supervisor"). And when *he* feels an employee "is no longer working out," he often delivers the message himself. He gets to "us[e] [his] own judgment," in other words, which management "relies on" and "expects." *See* 29 U.S.C. § 152(11); *Mo. Red Quarries*, 853 F.3d at 928.

Other "secondary indicia" point in the same direction. *Mo. Red Quarries*, 853 F.3d at 928. The fact that other employees usually hear about personnel decisions from Krhin must leave them with the impression that he has "some extra degree of supervisory authority." *Id.* at 929. Also "relevant" is that he holds a formal job title, "site superintendent," that itself suggests special decision-making authority. *Id.* He checks nearly all the boxes for a supervisor, someone who has no obligation to join

a union.  No "appl[ication]" of the requirement to him means no standing to challenge it.[2]  *Kaler*, 14 F.4th at 888 (citation omitted).

2.

Krhin would rather have us rely on two later declarations, one by him and another by one of Nordic's owners.  Together, he believes they create a genuine issue of material fact on whether he qualifies as a supervisor.  The district court viewed them as a sham: an attempt to create an "issue of fact" by "submitting [declarations] contradicting" earlier deposition testimony.  *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983).  The idea is that a genuine issue usually cannot come from a single witness taking conflicting positions.  *See James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020) (discussing the sham-affidavit rule and explaining that "a genuine issue of material fact cannot be conjured out of nothing").

Here, there is no need to determine whether the affidavits were a sham because nothing in them changes our conclusion that Krhin is a supervisor.  *See U.S. ex rel. Dunn v. N. Mem'l Health Care*, 739 F.3d 417, 419 (8th Cir. 2014) (noting that we may agree with the district court "on any basis supported by the record" (citation omitted)).  Between them, all they establish is that Krhin has "no authority to take any of [the listed personnel] actions absent approval from his superiors."  As proof, Nordic's owner adds that management "do[es] not simply accept whatever [he] recommends" and that "[a]ll other possible sources of information are always considered . . . before the final authority is granted . . . to take [a personnel] action."

These statements do not change the fact that Krhin makes personnel recommendations directly to Nordic's owners and "use[s] his independent judgment" in doing so.  He may have less final decision-making authority than he first claimed, but it is still enough to qualify as a supervisor.  *See Mo. Red Quarries*,

---

[2]At most, he is in the same position as the contractors, because he would need to establish that the project-labor agreements have violated his subordinates' speech and associational rights rather than his own.

853 F.3d at 928. Add that he "directs projects [and] mak[es] sure things are flowing properly" and others *perceive* him as "possess[ing] some extra degree of supervisory authority," and no reasonable juror could conclude otherwise. *Id.* at 929 (citation omitted); *see* 29 U.S.C. § 152(11) (listing the "authority . . . responsibly to direct" employees); *Schnuck*, 961 F.2d at 705 (recognizing that "monitor[ing] . . . crew and company employees" is an example of "responsibly direct[ing]" them).

C.

Without Krhin, the Christian Labor Association, which also has no injury of its own, lacks standing. It tries to rely on associational standing, which would allow it to vindicate the First Amendment rights of its members. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). One of the requirements, however, is identifying one or more of them who "would . . . have standing to sue in their own right." *Ia. League of Cities v. EPA*, 711 F.3d 844, 869 (8th Cir. 2013) (quoting *Laidlaw*, 528 U.S. at 181). Instead of pointing us to one, it asks us to *trust* that there are many.

At the summary-judgment stage, trust is not enough. The burden is on an association to "'set forth[,]' by affidavit or other evidence[,] 'specific facts'" that point us to a member who would have standing. *Kaler*, 14 F.4th at 888 (quoting *Lujan*, 504 U.S. at 561). The plaintiffs once again focus on Krhin, but he is a supervisor who lacks it. We also have a vague statement by a national representative of the Christian Labor Association, who claims that some of its members "perform construction work in Duluth" and surrounding areas. Missing, however, is any information identifying who those members are, much less any details that would allow us to determine whether, like Krhin, they would be exempt from the union-membership requirement. Without more, the Christian Labor Association lacks standing too. *See Lujan*, 504 U.S. at 561.

## III.

We accordingly vacate the district court's judgment and remand with instructions to dismiss based solely on a lack of standing.

_____