# United States Court of Appeals
## For the First Circuit

No. 12-2398

VERIZON NEW ENGLAND, INC.,

Plaintiff, Appellant,

v.

RHODE ISLAND DEPARTMENT OF LABOR AND TRAINING;
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 2323;
CLAIMANTS,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Torruella, Thompson and Kayatta,
Circuit Judges.

Arthur G. Telegen, with whom James M. Hlawek and Seyfarth Shaw LLP, were on brief for appellant.
Marc B. Gursky, with whom Elizabeth Wiens and Gursky Law Associates, was on brief for appellees Local 2323 and Claimants.
Adam J. Sholes, Special Assistant Attorney General, Peter F. Kilmartin, Attorney General, and Thomas A. Palombo, Assistant Attorney General, was on brief for appellee Rhode Island Department of Labor and Training.

July 17, 2013

**TORRUELLA, Circuit Judge.** Plaintiff-Appellant Verizon New England, Inc. ("Verizon") appeals from an order dismissing its federal court action against the Rhode Island Department of Labor and Training ("RIDLT") and claimant members of the International Brotherhood of Electrical Workers ("IBEW"), Local 2323, who claimed unemployment benefits following a large-scale work stoppage at Verizon ("Claimants"). After careful consideration, we affirm the district court's dismissal, but on the singular ground that dismissal is warranted under the Younger abstention doctrine.

## I. Background

### A. Factual Background

Verizon was a party to a collective bargaining agreement ("CBA") with six IBEW local unions (the "System Council T-6"), which included Local 2323. The CBA was in effect from August 3, 2008 until August 6, 2011. Between June 22, 2011 and August 6, 2011, the parties to the CBA attempted to reach a new agreement through negotiations. During said negotiations, on July 26, 2011, Verizon sent a letter to System Council T-6 notifying them in writing that, "if we do not reach a new agreement by August 6, the arbitration provisions of the various labor contracts would not be in effect for grievances."

Verizon and System Council T-6 were unable to reach a new agreement before the CBA expired. System Council T-6 called for a work stoppage, and its members commenced picketing Verizon's

-2-

facilities and remote work sites in New England. On or around August 23, 2011, Verizon reached an agreement with System Council T-6 under which the members of the various unions would return to work under the terms of the expired CBA. After the employees returned to work, approximately 800 members of the various unions employed by Verizon in Rhode Island applied for unemployment benefits before RIDLT.

On August 29, 2011, the Director of RIDLT denied the Claimants' application for unemployment benefits, concluding that they became unemployed as a result of a strike and were thus barred from such benefits under Section 28-44-16 of the Rhode Island Employment Security Act. Section 28-44-16(a) of that Act provides that an individual will not be entitled to benefits "if he or she became unemployed because of a strike or other industrial controversy in the establishment in which he or she was employed," but Section 28-44-16(b), which governs lockouts, provides that an individual is entitled to benefits if "unemployment is a result of his or her employer's withholding of employment for the purpose of resisting collective bargaining demands or gaining collective bargaining concessions."

The Claimants appealed the Director's denial of unemployment benefits to the RIDLT's Board of Review. On May 22, 2012, the Board reversed the Director's denial of unemployment benefits and found that the Claimants were entitled to receive

-3-

unemployment benefits under Section 28-44-16(b). Specifically, the Board found a series of actions on the part of Verizon to have constituted a constructive and actual lockout, including: "deleting of the arbitration provisions," which created a "substantial change to the status quo"; allowing Claimants to return to work if the current CBA were modified by removing the arbitration provisions; denying Claimants' access to Verizon's computers for employer business and Claimants' personal business (i.e., 401 accounts, health insurance, sick and vacation time, etc.) in preparation for the impending job action; collecting Claimants' employer-issued swipe/identification cards, employer-issued cell phones, laptops, various other tools and equipment; locking doors, chaining gates, and, at various work sites, having no personnel to allow Claimants access to work; and violating its past practice of allowing employees to work under an expired unmodified agreement. The Board also found that "record testimony established that the constructive lockout morphed into an actual lockout when the employer took overt actions of chaining gates, locking doors, failing to staff security kiosks, and denying access to its computer system." Verizon appealed the Board's decision to the Sixth Division District Court, Providence County, Rhode Island, where it remains pending.

**B. Procedural History**

While the matter was pending before the state court, Verizon filed a complaint in the United States District Court for

the District of Rhode Island challenging the Board's decision and seeking declaratory and injunctive relief.  Specifically, Verizon argued that the Board's decision should not be enforced as it was preempted by the National Labor Relations Act ("NLRA").

RIDLT moved to dismiss Verizon's complaint for failure to state a claim on two grounds: (1) the Board's decision was not preempted by the NLRA; and (2) in the alternative, the district court should abstain from hearing the matter under the Younger abstention doctrine.  The district court agreed with RIDLT and dismissed the complaint on both grounds.  On the preemption issue, it held that the Supreme Court's decision in New York Telephone Co. v. New York State Department of Labor, 440 U.S. 519 (1979), which held that the NLRA does not preempt a state's ability to provide strikers unemployment benefits, governed.  As to abstention, it held that the action must be dismissed as having met the applicable requirements under Younger.  Verizon filed this timely appeal challenging both grounds of dismissal.

## II.  Discussion

For purposes of this appeal, we accept as true the well-pleaded factual allegations in Verizon's complaint and draw all reasonable inferences from those allegations in its favor.  Lass v. Bank of America, N.A., 695 F.3d 129, 133 (1st Cir. 2012).  Since we find that the proper route in this case is to abstain from hearing it under Younger v. Harris, 401 U.S. 37 (1971), we do not reach the

-5-

merits of Verizon's preemption claim.  We thus proceed directly to discuss our abstention reasoning.

**A.  Ongoing State Court Proceedings and <u>Younger</u> Abstention**

This court reviews a district court's dismissal of a complaint on a motion to dismiss <u>de novo</u>.  <u>Lass</u>, 695 F.3d at 133.  We also review <u>de novo</u> whether <u>Younger</u> mandates a district court's abstention.  <u>Colonial Life & Accident Ins. Co.</u> v. <u>Medley</u>, 572 F.3d 22, 25 (1st Cir. 2009).

In <u>Younger</u>, the Supreme Court held that abstention is required where a plaintiff defending criminal charges in state court sought to have the federal court enjoin the ongoing state criminal proceedings.  <u>Younger</u> doctrine has been extended to civil actions, and is most commonly applied to suits seeking declaratory or injunctive relief.  <u>Rossi</u> v. <u>Gemma</u>, 489 F.3d 26, 34 (1st Cir. 2007).  Based on principles of comity, the doctrine instructs that, unless there are extraordinary circumstances, federal courts should not "interfere with ongoing state-court litigation, or, in some cases, with state administrative proceedings." <u>Id.</u> (quoting <u>Maymo-Meléndez</u> v. <u>Álvarez-Ramírez</u>, 364 F.3d 27, 31 (1st Cir. 2004)).  In this circuit, abstention is appropriate "when the requested relief would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge."  <u>Id.</u> at 34-35.

-6-

Verizon does not seem to challenge that the three criteria for Younger abstention were met here, and we agree with the district court that they were.[1] Verizon focuses instead on the availability of an exception to the Younger abstention doctrine when a preemption claim is "facially conclusive."

The "facially conclusive" preemption exception evolved out of the Supreme Court's suggestion in New Orleans Public Service, Inc. v. City of New Orleans ("NOPSI"), 491 U.S. 350 (1989), that Younger abstention may not be appropriate "if the federal plaintiff will 'suffer irreparable injury' absent equitable relief." Id. at 366 (quoting Younger, 401 U.S. at 43-44); see also Colonial Life, 572 F.3d at 26. The Court offered an example of such an injury upon "a showing that the challenged state statute is 'flagrantly and patently violative of express constitutional prohibitions.'" NOPSI, 491 U.S. at 366 (quoting Younger, 401 U.S. at 53-54). A "facially conclusive" claim of preemption, it found, could be "sufficient to render abstention inappropriate." Id. at 367. The Court, however, did not elaborate on when such an

---

[1] While Verizon does not directly concede that the three requirements under Younger were met, they only address those requirements in their brief on appeal by making the following statement: "Even if the three elements are met, Younger abstention is not appropriate if it is 'facially conclusive' that a state action is preempted by federal law." We accordingly deem Verizon's arguments waived as to whether the requirements for abstention under Younger are met. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

exception would be applicable since it held that the proceedings and order at issue did not "meet th[e] description" of such a "facially conclusive" claim.  Id.  It did explain that merely showing "a substantial claim of federal preemption" would not be enough, and stated that "[w]hat requires further factual inquiry can hardly be deemed 'flagrantly' unlawful for purposes of a threshold abstention determination."  Id. at 366-67.

Subsequent to NOPSI, this and other circuits have explicitly recognized that an exception to abstention exists where preemption is "facially conclusive" or "readily apparent."  See Colonial Life, 572 F.3d at 26; Chaulk Servs., Inc. v. Mass. Comm'n Against Discrimination, 70 F.3d 1361, 1370 (1st Cir. 1995); see also Midwestern Gas Transmission Co. v. McCarty, 270 F.3d 536, 539 (7th Cir. 2001); Commc'ns Telesys. Int'l v. Cal. Pub. Util. Comm'n, 196 F.3d 1011, 1017 (9th Cir. 1999).  In evaluating the applicability of this exception in the labor context, our circuit has mostly dealt with preemption challenges brought under San Diego Building Trades v. Garmon, 359 U.S. 236 (1959), to ongoing state proceedings that infringe on the jurisdiction of the National Labor Relations Board.  See, e.g., Local Union No. 12004, USW v. Mass., 377 F.3d 64, 78-80 (1st Cir. 2004); Chaulk Servs., 70 F.3d at 1370. However, we have more fully addressed the scope of the exception in Colonial Life.  There, we were asked, inter alia, to review a question of first impression: whether a plaintiff's state anti-

discrimination law claims, brought before the Massachusetts Commission Against Discrimination ("MCAD"), were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") because they also constituted federal discrimination claims under the Americans with Disabilities Act ("ADA"). Colonial Life, 572 F.3d at 24-25. We held that a "preemption determination [that] would require the district court to resolve a novel question of law . . . is not 'facially conclusive,' and, under such circumstances, the district court [is] required to abstain from deciding the preemption issue." Id. at 24. We also observed without deciding that the existence of a factual dispute presents "several problems with the district court's determination that preemption [is] 'facially conclusive.'" Id. at 29.

Navigating the evolution of the applicability of this exception, Verizon first dismisses any potential concern that a disagreement is present here requiring a detailed analysis of the factual record. Instead, it accepts as undisputed the pertinent facts "set forth in the Board's decision." It then claims that the district court should have found abstention inappropriate since it is "facially conclusive" that the Board's decision was preempted under International Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations Commission ("Machinists"), 427 U.S. 132 (1976). The Machinists preemption doctrine holds that states may not interfere with areas of federal labor relations intended by

Congress "to be controlled by the free play of economic forces." Id. (quoting NLRB v. Nash-Finch Co., 404 U.S. 138, 144 (1971)). In Verizon's view, the Board's determination that Verizon's "deletion of the arbitration provisions" from the CBA constituted a "constructive lockout" improperly interfered with such an area of federal labor relations. It did so by incentivizing Verizon to violate the NLRA "by unilaterally imposing arbitration procedures after expiration of a labor contract and pressuring Verizon to offer arbitration as a concession to unions during collective bargaining negotiations."

RIDLT responds by arguing that the Supreme Court's holding in New York Telephone directly contradicts Verizon's claim that preemption is "facially conclusive" in this case. In New York Telephone, the Court held that, even though Congress was undeniably aware "of the possible impact of unemployment compensation on the bargaining process," the NLRA's "omission of any direction concerning payment to strikers . . . implies that Congress intended that the States be free to authorize, or to prohibit, such payments." N.Y. Tel., 440 U.S. at 544. Under that holding, RIDLT asserts that Rhode Island is not preempted from deciding how, or if, to award unemployment benefits, and Verizon cannot avoid the application of that holding here by narrowly interpreting the Board's decision as "only taking into account the issue concerning the deletion of arbitration procedures for grievances."

Additionally, RIDLT rejects Verizon's claim that there is no factual dispute as to the pertinent facts here.  It argues that Verizon's exclusive concentration on the Board's factual finding pertaining to the "deletion of the arbitration provisions" fails to acknowledge the Board's additional factual findings that Verizon effectuated a constructive and actual lockout.

We agree with RIDLT that preemption is not "facially conclusive" here.  First, Supreme Court precedent in <u>New York Telephone</u> could not be clearer that "a State's power to fashion its own policy concerning the payment of unemployment compensation is not to be denied on the basis of speculation about the unexpressed intent of Congress."  440 U.S. at 545.  Rather, "Congress has decided to tolerate a substantial measure of diversity" in that area.  <u>Id.</u> at 546.  Further, <u>New York Telephone</u> addressed head on the <u>Machinists</u> preemption challenge in considering the conjunction of State administration of unemployment compensation schemes and the economic self-help capabilities of the parties to a labor-management dispute and expressly found that, even though "Congress was aware of the possible impact of unemployment compensation on the bargaining process," "the fact that the implementation of [a] general state policy affects the relative strength of the antagonists in a bargaining dispute is not a sufficient reason for concluding that Congress intended to pre-empt that exercise of state power."  <u>Id.</u> at 544, 546.  Therefore, if anything, it is

-11-

facially conclusive that <u>New York Telephone</u> precludes Verizon's preemption claim here.

To the extent that this case is distinguishable from <u>New York Telephone</u> on the basis of any legal implications of Verizon's announced position concerning the arbitration provisions, Verizon could only be characterized as presenting a novel question of law regarding the NLRA. We have not before decided whether the NLRA permits States, in their administration of unemployment compensation schemes, to influence labor arbitration. By asking us to decide that issue, Verizon is thus doing the equivalent of what the petitioners attempted to do in <u>New York Telephone</u>, which is "to extend the doctrine of labor law pre-emption in a new area." <u>Id.</u> at 533. However, under our precedent in <u>Colonial Life</u>, such a novel issue precludes any legal determination that preemption is "facially conclusive." <u>Colonial Life</u>, 572 F.3d at 24.

Finally, we cannot deem preemption "facially conclusive" here because while Verizon states that there is no factual dispute, its entire appeal is contingent on rejecting the Board's factual determination that a lockout occurred and challenging the Board's reversal of the Director's determination that the Claimants became unemployed as the result of a strike. The Board's factual finding that Claimants were constructively and actually locked out was directly contrary to the Director's findings and was dispositive for its conclusion that the Claimants were eligible for

unemployment benefits.  It is clear, then, that the parties indeed dispute the factual underpinnings decisive for the Claimants' eligibility for unemployment benefits, and in reaching a conclusion on the merits of Verizon's challenge, the district court would need to perform its own inquiry into the factual record to resolve that dispute.  Such a dispute precludes us from agreeing with Verizon that preemption is "facially conclusive" here.  See NOPSI, 491 U.S. at 367 ("what requires further factual inquiry can hardly be deemed 'flagrantly' unlawful for purposes of a threshold abstention determination"); Colonial Life, 572 F.3d at 29 ("given the existence of [a] factual dispute, we see several problems with the district court's determination that preemption was 'facially conclusive.'").  Since Younger "prohibits a district court from addressing the merits of the parties' claims unless preemption is facially conclusive," Colonial Life, 572 F.3d at 29, it was thus proper for the district court to dismiss Verizon's claim on abstention grounds.

### III.  Conclusion

We thus conclude that the district court properly dismissed Verizon's complaint on Younger abstention grounds and accordingly affirm.

**Affirmed.**