# United States Court of Appeals
## For the First Circuit

---

No. 14-1934

SIRVA RELOCATION, LLC and AETNA LIFE INSURANCE COMPANY,

Plaintiffs, Appellants,

v.

CHARLOTTE GOLAR RICHIE, IN HER OFFICIAL CAPACITY AS COMMISSIONER OF THE MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION, ET AL.,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

---

Before

Howard, Chief Judge,
Selya and Kayatta, Circuit Judges.

---

Jonathan C. Bond, with whom Miguel A. Estrada, Gibson, Dunn & Crutcher LLP, Stephen D. Rosenberg, and The Wagner Law Group were on brief, for appellants.

Carrie M. Benedon, Assistant Attorney General, with whom Maura Healey, Attorney General of Massachusetts, was on brief, for appellees.

Mala M. Rafik, S. Stephen Rosenfeld, Rosenfeld, Rafik & Sullivan, P.C., Anne L. Josephson, and Kotin, Crabtree & Strong, L.L.P. on brief for American Civil Liberties Union of Massachusetts, Community Legal Aid of Central and Western Massachusetts, Health Law Advocates, Jewish Alliance for Law and

Social Action, Lawyers' Committee for Civil Rights and Economic Justice, Massachusetts Employment Lawyers Association, Massachusetts Law Reform Institute, and National Alliance on Mental Illness of Massachusetts, amici curiae in support of appellees.

———————————

July 20, 2015

———————————

**SELYA**, **Circuit Judge**. In Younger v. Harris, 401 U.S. 37 (1971), the Supreme Court enunciated a doctrine of abstention. Fidelity to that doctrine requires federal courts, in the absence of extraordinary circumstances, to refrain from interfering with certain state proceedings. See id. at 43-45. The Supreme Court recently revisited the Younger doctrine, clarified its operation, and narrowed its scope. See Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584 (2013). This case affords us our first opportunity to consider the impact of Sprint on Younger abstention.

The court below, ruling with the benefit of Sprint, held that Younger abstention was appropriate here and dismissed the federal court action. See Sirva Relocation, LLC v. Tynes, No. 13-12530, 2014 WL 3892202, at *7 (D. Mass. Aug. 7, 2014). The federal plaintiffs appeal. After positioning this case within the Younger framework, considering the factors limned in Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423 (1982), and evaluating the applicability vel non of possible exceptions to Younger abstention, we affirm the district court's decision to abstain. Along the way, we clarify our own case law concerning the exception to the Younger doctrine for facially conclusive claims of preemption.

# I. BACKGROUND

This appeal is the latest bout in a prolonged legal struggle concerning fringe benefits offered by plaintiff-appellant Sirva Relocation, LLC (Sirva) to its work force. We briefly rehearse the history and travel of the dispute.

Sirva (a company that provides moving and housing solutions) offers a complement of benefits to its employees through a group benefit plan. The plan, which is underwritten by plaintiff-appellant Aetna Life Insurance Company (Aetna), includes a long-term disability (LTD) component. Employees who elect LTD coverage and become totally disabled receive monthly payments equal to a portion of their pre-disability income. Pertinently, the LTD plan (the Plan) provides disparate benefits depending on the nature of an employee's disability: employees who become totally disabled prior to age 62 may receive benefits until age 65 if their disability stems from a physical impairment, whereas those who become totally disabled from a mental or psychological condition are generally entitled to receive LTD benefits for a maximum of 24 months.[1]

In September of 2004, Sirva hired David Knight as director of global sales. Knight chose to participate in the

---

[1] We say "generally" because the Plan makes an exception, not relevant here, for employees who are hospitalized beyond 24 months as a result of a mental or psychological condition.

benefit plan and enrolled in the LTD component. In November of that year, Knight took a leave of absence due to mental illness. Knight was subsequently found to be totally disabled and began receiving disability benefits. By May of 2005, Knight had exhausted his short-term disability benefits, and Aetna informed him that LTD payments would commence. Aetna's letter noted that if Knight's disability was in any way attributable to a mental condition, his LTD payments would cease 24 months after the onset of the disability unless he was hospitalized at that time. See supra note 1.

In December of 2006, Aetna informed Knight that he had exhausted his LTD benefits and that payments had been terminated. Aetna's letter noted that the Plan was subject to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461, and that Knight had the right to seek internal review of the benefits termination. It went on to explain that if Knight was unhappy with the outcome of that review, he could sue under ERISA. See id. § 1132(a).

Knight did not pursue further claims review but, rather, filed a charge of discrimination with the Massachusetts Commission Against Discrimination (MCAD) in September of 2007. He complained that the appellants (Sirva and Aetna) had discriminated against him on the basis of disability in violation of Massachusetts General Laws chapter 151B and the Americans with Disabilities Act

- 5 -

of 1990 (ADA), 42 U.S.C. §§ 12101-12213. The crux of his complaint was that the appellants paid disparate LTD benefits depending on whether an employee suffered from a physical or a mental impairment.

The appellants promptly moved to dismiss Knight's complaint. They argued that the chapter 151B claim was preempted by ERISA and that the ADA claim failed on the merits. The MCAD did nothing until April of 2010, when the Investigating Commissioner denied the appellants' motion without prejudice. Her rescript asserted, without meaningful elaboration, that factual questions concerning both ERISA coverage and the merits precluded dismissal.

The appellants filed a timely answer and position statement reiterating their defenses. The MCAD took no further action for nearly two years. At that time, an MCAD investigator requested from the appellants documents concerning both ERISA coverage and the merits of Knight's complaint. The appellants quickly supplied the requested information.

In October of 2012, the Investigating Commissioner found that probable cause existed to credit Knight's allegations and ordered the parties to participate in a conciliation conference, warning that failure to attend could result in sanctions or immediate certification of the charge for a public hearing. A summary of the MCAD's investigation accompanied the finding. The

appellants sought reconsideration of the probable cause finding, renewing their argument that the chapter 151B claim was preempted and, therefore, the MCAD lacked jurisdiction to proceed. The MCAD denied reconsideration and ordered the parties to proceed with discovery.

In May of 2013 — almost six years after the commencement of the MCAD proceeding — the Investigating Commissioner certified the case for public hearing and added the MCAD's name to the caption. Following a pre-hearing conference, the MCAD scheduled the public hearing for January of 2014.

At that juncture, the appellants repaired to the United States District Court for the District of Massachusetts. Their federal complaint named as defendants the Commonwealth of Massachusetts, the MCAD, its commissioners (in their official capacities), and Knight. The complaint entreated the district court to declare that ERISA preempted the chapter 151B claim and any further MCAD investigation of the charge. On that basis, the appellants asked the court to enjoin the MCAD proceeding. The MCAD and Knight moved to dismiss the complaint, exhorting the district court to abstain.

While the case was pending, the Supreme Court decided Sprint. The district court secured supplemental briefing and then heard oral arguments. The court reserved decision and, in a thoughtful memorandum, ruled that abstention was required. See

Sirva, 2014 WL 3892202, at *4-7. Consequently, it dismissed the case. See id. at *7. This timely appeal ensued.

## II.  ANALYSIS

The appellants attack the district court's decision to abstain on three fronts.  First, they claim that the MCAD proceeding is not the sort of proceeding to which Younger applies. Second, they claim that even if the proceeding comes within Younger's orbit, the Middlesex factors defeat abstention.  Third, they claim that, in all events, an exception to Younger for facially conclusive allegations of preemption permits a federal court to enjoin the MCAD proceeding.  All of these claims were rejected by the district court, and that court's rulings engender de novo review.  See Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 68 (1st Cir. 2005).

### A.    The Evolution of the Younger Doctrine.

Unpacking the appellants' asseverational array requires some exploration of the evolution of the Younger doctrine.  We start from the settled premise that the pendency of a state-court action generally does not preclude a federal court from addressing the same subject matter.  See Co. River Water Conserv. Dist. v. United States, 424 U.S. 800, 817 (1976).  This is consistent with the tenet that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them."  Id. Nevertheless, this obligation is not absolute — and the Supreme

- 8 -

Court has developed a small cluster of doctrines that either require or allow federal courts to defer to state proceedings in particular circumstances. See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716-18 (1996). Younger abstention reflects one such doctrine.

In Younger, the Justices held that principles of equity and comity demand that a federal court abstain from entertaining a suit that seeks to enjoin a state criminal prosecution as violative of federal law so long as the state proceeding affords an adequate opportunity to raise the federal defense and abstention will not cause irreparable harm. See 401 U.S. at 43-46. In a companion case, the Justices made pellucid that the same principles encumber a federal court's ability to order declaratory relief. See Samuels v. Mackell, 401 U.S. 66, 69-70, 72-73 (1971).

The Supreme Court subsequently extended the Younger doctrine to certain quasi-criminal proceedings, see Huffman v. Pursue, Ltd., 420 U.S. 592, 594 (1975), and certain proceedings involving the enforcement of state-court orders and judgments, see Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 13-14 (1987). Similarly, some state administrative proceedings may trigger Younger abstention. See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans (NOPSI), 491 U.S. 350, 369 n.4 (1989).

Over the years, the Court has recognized a handful of exceptions to the Younger doctrine. Abstention is inappropriate,

for example, when a state proceeding is brought in bad faith, that is, for the purpose of harassment.  See Younger, 401 U.S. at 53-54.  So, too, a federal court need not stay its hand if the state forum provides inadequate protection of federal rights.  See Gibson v. Berryhill, 411 U.S. 564, 575, 578-79 (1973).  Abstention is likewise inappropriate when a state statute is "flagrantly and patently violative of express constitutional prohibitions." Younger, 401 U.S. at 53 (quoting Watson v. Buck, 313 U.S. 387, 402 (1941)).

In Middlesex, the Court added a further gloss.  It explained that a federal court must abstain when there is an ongoing state proceeding (judicial in nature), which implicates important state interests and provides an adequate opportunity to raise federal defenses. See 457 U.S. at 432.  Thereafter, lower courts sometimes loosely applied the three Middlesex factors as an exclusive test for determining the applicability of the Younger doctrine.  See, e.g., Brooks v. N.H. Supreme Court, 80 F.3d 633, 638 (1st Cir. 1996).

Recently, the Supreme Court clarified the range of state proceedings that may suffice to trigger Younger abstention.  The Court explained that Younger applies only to "exceptional" state proceedings, Sprint, 134 S. Ct. at 588, and the Middlesex factors do not operate as a free-standing test, see id. at 593.  Giving independent life to the Middlesex factors would transmogrify

Younger from a narrow exception to the federal courts' duty to exercise their jurisdiction into a rule mandating abstention in the case of "virtually all parallel state and federal proceedings." Id.

The Sprint Court held that only three types of state proceedings trigger Younger abstention: (i) criminal prosecutions, (ii) "civil proceedings that are akin to criminal prosecutions," and (iii) proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." Id. at 588. If a proceeding does not fit within this taxonomy, Younger abstention will not lie. See id. at 593-94.

However, the Sprint Court did not entirely abandon the Middlesex factors. Although those factors cannot alone bear the weight of abstention, they constitute "additional factors appropriately considered by [a] federal court before invoking Younger." Id. at 593.

We distill from Sprint a three-step approach to Younger abstention. To begin, a federal court must ascertain whether a particular state proceeding falls within the Younger taxonomy. If so, the court must then take the second step and consider whether the Middlesex factors support abstention. And if these two steps leave the case on track for abstention, the court must take the third step and determine whether any of the isthmian exceptions to the Younger doctrine apply.

- 11 -

## B. **The Taxonomy Question**.

We move now from the general to the specific. The appellants' opening salvo posits that the MCAD proceeding does not engage the gears of Younger abstention at all. In their view, the MCAD is a neutral arbiter adjudicating a private dispute between an employer and an employee.

The parties agree that the only Sprint niche into which the MCAD proceeding might fit is the category for civil enforcement proceedings resembling "criminal prosecution[s] in important respects." Id. at 592 (internal quotation marks omitted). The Sprint Court described the hallmarks of such proceedings. For one thing, such a proceeding is "characteristically initiated to sanction the federal plaintiff . . . for some wrongful act." Id. For another thing, "a state actor is routinely a party to the state proceeding and often initiates the action." Id. Finally, an investigation is typically undertaken, culminating in a formal charge or complaint. See id.

This court has applied the Younger analysis to MCAD proceedings in several earlier cases. See, e.g., Colonial Life & Accident Ins. Co. v. Medley, 572 F.3d 22 (1st Cir. 2009); Local Union No. 12004 v. Massachusetts, 377 F.3d 64 (1st Cir. 2004). But these cases predate Sprint and do not directly address the question of whether MCAD proceedings are sufficiently akin to

criminal prosecutions to trigger abstention.  We begin with that question.

We find instructive the Supreme Court's decision in Ohio Civil Rights Commission v. Dayton Christian Schools, Inc., 477 U.S. 619 (1986).  There, a teacher filed a complaint with a state civil-rights agency alleging that her employer had discriminated against her on the basis of sex.  See id. at 623-24. The agency notified the school that it was conducting an investigation into the matter and urged settlement, warning that a failure to settle could lead to formal adjudication.  See id. at 624.  After finding probable cause to believe that discrimination had occurred, the agency forwarded a proposed conciliation agreement.  See id.  When the school failed to respond, the agency initiated an administrative proceeding by filing a complaint.  See id.

The Supreme Court concluded that the Younger doctrine barred the school's subsequent federal action to enjoin the agency proceeding on First Amendment grounds.  See id. at 628.  The Sprint Court later identified this agency proceeding as the type of civil enforcement action that falls within the Younger taxonomy.  See Sprint, 134 S. Ct. at 592.

The proceeding here is materially indistinguishable from that described in Dayton.  Knight filed an MCAD complaint against the appellants; an MCAD investigator sought and obtained documents concerning the structure of the Plan; the Investigating

- 13 -

Commissioner made a finding of probable cause; conciliation failed; and the Investigating Commissioner certified the matter for public hearing — an action which, under applicable regulations, was the functional equivalent of filing a formal complaint, see 804 Mass. Code Regs. 1.20(3). This course of action satisfies the Sprint Court's state-involvement and investigation criteria.

Here, moreover, the MCAD proceeding is aimed at sanctioning the appellants for wrongful conduct. See Stonehill Coll. v. Mass. Comm'n Against Discrim., 808 N.E.2d 205, 216-17 (Mass. 2004) ("[T]he primary purpose of an [MCAD proceeding] is to vindicate the public's interest in reducing discrimination in the workplace by deterring, and punishing, instances of discrimination by employers against employees."). It is, therefore, "of the sort entitled to Younger treatment." Sprint, 134 S. Ct. at 592 (internal quotation marks and alteration omitted).

The appellants strain to distinguish the MCAD proceeding from the proceeding in Dayton. They suggest, for instance, that Dayton is distinguishable because the conduct at issue there violated Ohio criminal law. That is true as far it goes — but the distinction does not take the appellants very far. Neither Sprint nor Dayton relied on (or even mentioned) such a distinction. And though the availability of parallel criminal sanctions may be a relevant datum, see ACRA Turf Club, LLC v. Zanzuccki, 748 F.3d 127, 138 (3d Cir. 2014); Mulholland v. Marion Cnty. Election Bd.,

- 14 -

746 F.3d 811, 816-17 (7th Cir. 2014), it is not a necessary element when the state proceeding otherwise sufficiently resembles a criminal prosecution, see, e.g., Middlesex, 457 U.S. at 432-35 (applying Younger to state disciplinary proceeding intended to punish lawyer for violating ethical rules).

In the same vein, the appellants expostulate that the MCAD is merely refereeing a private dispute. But contrary to their importunings, the fact that Knight initiated the proceeding by filing a complaint with the MCAD is not dispositive of the question. In Dayton, for example, the agency's investigation was sparked by a private complaint. See 477 U.S. at 623-24; see also Sprint, 134 S. Ct. at 592 (observing that a state actor "often initiates the action" (emphasis supplied)).

The appellants' further assertion that the MCAD failed to conduct an investigation is belied by the record. An MCAD investigator requested a trove of documents from the appellants, and the subsequent probable cause finding was accompanied by a summary of the agency's investigation.

The appellants next argue that the MCAD proceeding has the trappings of a civil proceeding and, thus, does not accommodate Younger abstention. This argument is threadbare. Under Massachusetts law, an individual who believes that he has been a victim of discrimination has "two largely independent avenues for redress." Stonehill, 808 N.E.2d at 218 (internal quotation mark

omitted).  He may either file a complaint with the MCAD and rely exclusively on the agency's processes or remove the case to state court and maintain a private action in his own name.  See id. at 216-17.

Where, as here, an individual elects to travel along the first avenue, the agency prosecutes the charge, see Mass. Gen. Laws ch. 151B, § 5, and "proceeds in its own name," Joulé, Inc. v. Simmons, 944 N.E.2d 143, 148 (Mass. 2011).  The agency can settle the dispute without the complaining party's consent.  See 804 Mass. Code Regs. 1.15(6)(b).  If settlement proves to be infeasible, the agency can issue a formal complaint in its own name.  See id. § 1.20(3).

While the MCAD may allow the parties to engage in discovery, that discovery is intended primarily to "assist[] the Investigating Commissioner."  Id. § 1.13(7)(a).  And even though the MCAD is empowered to seek relief on behalf of the victim of the alleged discrimination, the primary purpose of any such relief is to effectuate the goals of Massachusetts anti-discrimination law.  See Joulé, 944 N.E.2d at 149-50; Stonehill, 808 N.E.2d at 216-17; cf. EEOC v. Waffle House, Inc., 534 U.S. 279, 294-96 (2002) (discussing parallel federal scheme).  The state-centric nature of MCAD proceedings is underscored by the fact that an aggrieved individual must intervene in the public hearing in order to

"advance a claim of discrimination in [his] own name." Joulé, 944 N.E.2d at 151; see 804 Mass. Code Regs. 1.20(4).

Viewed through this prism, the participation of the appellants and Knight by means of pleadings, motion practice, and discovery does not disqualify the MCAD proceeding from Younger protection. Unlike the proceeding at issue in Sprint, which was initiated to settle a private dispute and involved no state-driven investigation or formal charge, see 134 S. Ct. at 592-93, the MCAD proceeding exhibits all the essential hallmarks of a civil enforcement action that is "more akin to a criminal prosecution than are most civil cases," id. at 593 (internal quotation marks omitted). That Knight's lawyer helped in the MCAD's investigation does not alter the fundamental character of the proceeding. Cf. NOPSI, 491 U.S. at 371 (explaining that in classifying an agency action as legislative or judicial, "[t]he nature of the final act determines the nature of the previous inquiry" (quoting Prentis v. Atl. Coast Line Co., 211 U.S. 210, 227 (1908))).

We also reject the appellants' contention that defects in this particular proceeding place it beyond Younger's embrace. They point out that the order setting the matter for public hearing fails to address certain required issues, see 804 Mass. Code Regs. 1.20(3); that the record contains no order formally designating Knight's counsel as an agent of the MCAD, see id. § 1.09(5)(b)-(c); and that protracted delay in the investigation transgressed

agency regulations, see id. § 1.13(1), (3). But these alleged shortcomings, though regrettable, are beside the point; courts ordinarily should look to the general class of proceedings in determining whether Younger abstention applies. See NOPSI, 491 U.S. at 365. Garden-variety procedural defects in the roll-out of a particular proceeding do not change its fundamental character.

The appellants have one last shot in their sling. They say that the Dayton Court found abstention appropriate only after deciding whether the First Amendment barred the agency proceeding. See 477 U.S. at 628. Arguing by analogy, the appellants insist that the district court should not have abstained without first resolving their claim that the MCAD proceeding is wholly preempted.

This argument misreads Dayton. While the Dayton Court stated that the Ohio agency did not violate any constitutionally assured right simply by investigating the reason for the teacher's discharge, see id., the Court left it for the agency to determine whether further inquiry would offend the First Amendment, see id.

What happened here is fully compatible with the Dayton Court's approach. The MCAD has jurisdiction to investigate and adjudicate the chapter 151B claim (if only to determine whether it, and thus any further agency action, is preempted by ERISA).

To say more about the taxonomy issue would be supererogatory. The MCAD proceeding is plainly the sort of civil enforcement action that fits within the Younger design.

## C. **The Middlesex Factors**.

This brings us to the question of whether the Middlesex factors support abstention. The first Middlesex factor asks whether there is an ongoing state proceeding that is judicial in nature. That is obviously so here: the MCAD completed an investigation, issued a formal complaint, conducted a pre-hearing conference, and scheduled an adjudicative hearing. These actions conclusively show the existence of an ongoing state proceeding that is judicial in nature. See id. at 624, 627-28.

The second Middlesex factor asks whether the proceeding implicates important state interests. This inquiry need not detain us. The Supreme Court has squarely held that a state's interest in eradicating discrimination in the workplace is of sufficient magnitude to satisfy this factor. See NOPSI, 491 U.S. at 365 (citing Dayton, 477 U.S. at 628). The appellants' suggestion that Massachusetts has no real interest in this proceeding because ERISA preempts it is circular and, thus, without merit. See id. at 365 (expressly rejecting similar reasoning).

The last Middlesex factor deals with the adequacy of the opportunity to raise federal defenses in the state proceeding. The appellants point to the extensive delays in the MCAD's processing and investigation of Knight's allegations and argue that this egregious foot-dragging has deprived them of a meaningful opportunity to raise their preemption defense.

To be sure, the MCAD proceeding has moved at a snail's pace. And though the third Middlesex factor is generally deemed satisfied as long as no state procedural rule bars the assertion of a federal defense and the state affords a fair opportunity to raise that defense, see Moore v. Sims, 442 U.S. 415, 430-32 (1979), adjudicative delay may (at least in theory) be so extraordinary that it justifies federal-court intervention, see id. at 432; cf. Gibson, 411 U.S. at 575 n.14 (noting that agency delay may obviate the need to exhaust administrative remedies). But a federal plaintiff's failure to pursue potentially available state judicial remedies undermines that plaintiff's ability to demonstrate that it had no meaningful opportunity to assert its federal defense. See Moore, 442 U.S. at 432; Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 201-02 (2d Cir. 2002).

While we do not condone the MCAD's lackadaisical handling of this matter, the appellants never sought to invoke potentially available state judicial remedies (such as a writ of mandamus) to ameliorate the delay. See Mass. Gen. Laws ch. 249, § 5; see also Town of Reading v. Att'y Gen., 285 N.E.2d 429, 431 (Mass. 1972) ("[M]andamus is a remedy for (administrative) inaction . . . ."). Instead, they waited until the MCAD was at last poised to hear and decide the preemption issue before they sought federal assistance and, we are told, requested a stay of the agency proceeding, thereby inviting additional delay. Under

these circumstances, we must "assume that state procedures [would have afforded] an adequate remedy." Pennzoil, 471 U.S. at 15.

The MCAD consistently has acknowledged that ERISA preemption remains an open question in the case. There is no compelling reason to believe that, if the public hearing is allowed to proceed, the MCAD will not address that question with due dispatch. If the agency's answer is not to the appellants' liking, they can seek review in the state courts. See Mass. Gen. Laws ch. 151B, § 6; 804 Mass. Code Regs. § 1.24(2). That opportunity to present their federal claim is sufficient to satisfy the third Middlesex factor. See Dayton, 477 U.S. at 629.

That ends this aspect of the matter. The short of it is that all three Middlesex factors support the decision of the court below to abstain.

### D.    **The Preemption Exception**.

The final leg of our journey takes us to the handful of exceptions to Younger abstention identified by the Supreme Court. One such exception is potentially relevant here. That exception pertains when state law is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." Younger, 401 U.S. at 53-54 (internal quotation mark omitted). Though this exception is quite narrow, see Rossi v. Gemma, 489 F.3d 26, 35 n.16 (1st Cir. 2007); Dubinka

- 21 -

v. Judges of Superior Court, 23 F.3d 218, 225 (9th Cir. 1994), the Court has left open the possibility that a facially conclusive claim of preemption may serve to override the Younger mandate, see NOPSI, 491 U.S. at 366-67.

Following this lead, we have recognized facially conclusive preemption as a potentially valid basis for refusing Younger abstention. See Chaulk Servs., Inc. v. Mass. Comm'n Against Discrim., 70 F.3d 1361, 1370 (1st Cir. 1995). In the case at hand, the appellants ask us to find facially conclusive their assertion that ERISA preempts the chapter 151B claim and, thus, the MCAD proceeding itself.[2] To evaluate this construct, some background is helpful.

ERISA preempts "any and all State laws insofar as they . . . relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a). This sweeping language preempts a wide variety of state laws to the extent that they have the requisite connection with an ERISA plan. See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 95-100 (1983).

Although many state anti-discrimination laws that relate to ERISA plans may beget ERISA preemption, some do not. For

---

[2] In this court, the appellants have not reasserted the argument, made below, that ERISA likewise prohibits the MCAD from investigating and adjudicating a standalone ADA claim. Because we conclude that preemption of the chapter 151B claim is not facially conclusive and that the agency may resolve that issue, we have no reason to explore this aspect of the matter further.

example, ERISA does not preempt federal anti-discrimination laws (such as the ADA), see 29 U.S.C. § 1144(d), so state anti-discrimination laws are immune to ERISA preemption insofar as they prohibit conduct proscribed by federal law, see Tompkins v. United Healthcare of New Eng., Inc., 203 F.3d 90, 96-97 (1st Cir. 2000). But to the extent that a state anti-discrimination law prohibits more conduct than its federal counterpart, it is preempted when applied to an ERISA plan. See Shaw, 463 U.S. at 103-04.

There is little question but that the chapter 151B claim sub judice relates to the Plan: it seeks directly to regulate the Plan's contents. Whether preemption of the claim is facially conclusive, though, turns on the answers to two ancillary questions. First, does the Plan fall at least arguably outside the realm of ERISA? Second, does the ADA at least arguably prohibit an employer from offering disparate benefits based on the type of disability that may afflict an employee? If either of these answers is in the affirmative, the appellants' claim of preemption cannot be deemed facially conclusive.

We start and end with the second question.[3] In Colonial Life, we found facially inconclusive a nearly identical claim of

_____

[3] Because this question yields an affirmative answer, we bypass the first question and take no view on it. For the sake of completeness, however, we note that the MCAD has contended all along, albeit without meaningful elaboration, that factual disputes abound as to the existence of ERISA coverage.

- 23 -

preemption (a claim that ERISA preempted an MCAD charge that state law prohibited providing short-term disability benefits to employees with physical, but not mental, disabilities).  See 572 F.3d at 27-28.  The appellants have not identified any supervening authority that would allow us to second-guess that determination.  See San Juan Cable LLC v. P.R. Tel. Co., 612 F.3d 25, 33 (1st Cir. 2010) (discussing "law of the circuit" doctrine).

Even so, the MCAD gives Colonial Life too wide a berth. It reads that decision as holding that any time a preemption claim presents an issue of first impression in this circuit, the claim cannot be facially conclusive.  While that reading finds support in some of Colonial Life's dicta, see, e.g., 572 F.3d at 28-29 (stating that "the existence of a question of first impression regarding the ADA's applicability . . . precludes preemption from being facially conclusive"), it is not the holding of the case. If it were, Colonial Life would conflict with Chaulk, in which we determined that a preemption claim was facially conclusive even though the relevant issue (concerning whether the doctrine articulated in San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959), divested the MCAD of jurisdiction over a state-law gender discrimination claim) was one of first impression in this circuit.  See Chaulk, 70 F.3d 1361.  It would also conflict with common sense: whether pigs can fly is a question of first impression in this circuit — we have no holding directly on point

- 24 -

— but the answer to this question is so obvious as to be facially conclusive.

The holding of Colonial Life is far less mechanical. The court explained that "the district court's need to conduct a 'detailed analysis,' including resolving interjurisdictional differences" demonstrated that ERISA preemption was not facially conclusive. Colonial Life, 572 F.3d at 28. The rule, then, is that when a federal statute indisputably preempts a state-law claim, preemption is facially conclusive whether or not we have previously opined on the question. But when there is room for reasonable doubt, the preemption claim is not facially conclusive and cannot block abstention. See, e.g., Verizon New Eng., Inc. v. R.I. Dep't of Labor & Training, 723 F.3d 113, 118-19 (1st Cir. 2013) (holding preemption exception inapplicable where federal plaintiff was attempting "to extend the doctrine of labor law pre-emption in[to] a new area" (internal quotation marks omitted)).

Drawing the line in this place is consistent with Younger, which contemplates that when federal questions are raised in a state proceeding, those questions ordinarily should be resolved in that proceeding. See 401 U.S. at 45. Only when preemption of the state-law claim is beyond reasonable dispute does the paradigm shift. See Hughes v. Att'y Gen. of Fla., 377 F.3d 1258, 1265 (11th Cir. 2004). Even modest ambiguity concerning the result of a preemption inquiry precludes this shift.

- 25 -

Preemption has been held not facially conclusive if, for example, there are unresolved factual disputes, see NOPSI, 491 U.S. at 367; Colonial Life, 572 F.3d at 27, or if a federal court would be required to delve into unsettled complexities of state law, see, e.g., GTE Mobilnet v. Johnson, 111 F.3d 469, 478 (6th Cir. 1997), or if the reach of a preemption provision is itself uncertain, see Woodfeathers, Inc. v. Washington County, 180 F.3d 1017, 1022 (9th Cir. 1999). Enjoining state proceedings in any of these circumstances would "defile the basic presumption that state courts are fully capable of safeguarding federal constitutional rights." Brooks, 80 F.3d at 639.

In this case, the inquiry reduces to whether the ADA conclusively permits an employer to offer disparate benefits based on the type of disability that may afflict an employee. The appellants say that it does. In support, they point to what they describe as the unanimous consensus of federal circuit courts on this issue.[4] See, e.g., EEOC v. Staten Island Sav. Bank, 207 F.3d 144, 152-53 (2d Cir. 2000); Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1116-18 (9th Cir. 2000); Kimber v. Thiokol Corp., 196 F.3d 1092, 1101-02 (10th Cir. 1999); Lewis v. Kmart Corp., 180 F.3d 166, 172 (4th Cir. 1999); Ford v. Schering-Plough

---

[4] The Eleventh Circuit initially decided the issue the other way, but then withdrew the opinion pending rehearing. See Johnson v. K Mart Corp., 273 F.3d 1035, 1070 (11th Cir. 2001). No opinion on rehearing was ever issued, and the case reportedly was settled.

Corp., 145 F.3d 601, 608-10 (3d Cir. 1998); Parker v. Metro. Life Ins. Co., 121 F.3d 1006, 1015-19 (6th Cir. 1997) (en banc); EEOC v. CNA Ins. Cos., 96 F.3d 1039, 1043-45 (7th Cir. 1996); Krauel v. Iowa Methodist Med. Ctr., 95 F.3d 674, 677-78 (8th Cir. 1996). Based on this precedential phalanx, the appellants urge us to find facially conclusive the proposition that the ADA permits such a differential-benefit scheme and that, therefore, ERISA preempts the chapter 151B claim.

Though this argument has some superficial allure, there is more to the story. The Supreme Court has never considered whether the ADA forbids an employer from offering disparate benefits to different classes of the disabled. Moreover, deciding this question would entail resolving a complex web of legal issues. These issues include whether a totally disabled individual can sue under the ADA, see Ford, 145 F.3d at 604-08; whether a differential-benefits claim is viable under the ADA, see id. at 608-10; Parker, 121 F.3d at 1010-14; and what bearing (if any) the ADA's safe harbor provision may have on differential-benefits claims, see Staten Island, 207 F.3d at 150-51.

To complicate matters further, there is some reason to think that the question is not open-and-shut. Some of the circuit court decisions upon which the appellants rely were made over strong dissents. See, e.g., Parker, 121 F.3d at 1020-22 (Merritt, J., dissenting). Furthermore, many of them were decided before

Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581 (1999), which the MCAD envisions as supporting the viability of differential-benefits claims under the ADA. To assess the soundness of this proposition, we would have to untangle the relationship between Olmstead and the Court's earlier decisions in Traynor v. Turnage, 485 U.S. 535 (1988), and Alexander v. Choate, 469 U.S. 287 (1985). None of the decisions on which the appellants rely has undertaken this task.

Last — but far from least — our prior opinions have left open the possibility that an ADA claim based on differential benefits may be viable. See Tompkins, 203 F.3d at 95 n.4; Carparts Distrib. Ctr., Inc. v. Auto. Wholesaler's Ass'n of New Eng., Inc., 37 F.3d 12, 19-20 (1st Cir. 1994). So, too, district courts in this circuit remain divided on the viability of such claims. Compare Fletcher v. Tufts Univ., 367 F. Supp. 2d 99, 111 (D. Mass. 2005) (allowing such a claim to proceed), and Iwata v. Intel Corp., 349 F. Supp. 2d 135, 149 (D. Mass. 2004) (same), with Colonial Life & Accident Ins. Co. v. Medley, 584 F. Supp. 2d 368, 380 (D. Mass. 2008) (reaching opposite conclusion), and Witham v. Brigham & Women's Hosp., Inc., No. 00-268, 2001 WL 586717, at *3-4 (D.N.H. May 31, 2001) (same).

Given this littered legal landscape, it cannot be said that there is no room for principled disagreement about the viability of differential-benefits claims under the ADA. While

the answer to that question seems much clearer than the MCAD admits, it is not the slam dunk that the appellants suggest. In short, resolving the preemption question presented here calls for exactly the sort of extensive legal analysis that places the facially conclusive preemption exception out of reach.

The conclusion that no exception to the Younger doctrine applies here is reinforced by the appellants' utter failure to explain how they will be irreparably harmed by allowing the MCAD to resolve this matter. That failure is important because the common thread that links the various Younger exceptions is that, in particular situations, closing the door of the federal court to a federal question will result in irreparable harm. See NOPSI, 491 U.S. at 366; Kugler v. Helfant, 421 U.S. 117, 123-24 (1975); Younger, 401 U.S. at 53-54. And only when it is crystal clear that the state tribunal either lacks the authority to proceed or can provide no meaningful relief can a party hope to demonstrate the degree of irreparable harm needed to justify federal-court intervention. See NOPSI, 491 U.S. at 366-67.

Here, the MCAD is competent to adjudicate the federal issues presented in this case and adequate review is available in the state courts. The record strongly suggests that the appellants will suffer no harm apart from the typical inconvenience that accompanies defending against charges that have been lodged. That inconvenience is not weighty enough to tip the scales: the Younger

Court admonished long ago that "the cost, anxiety, and inconvenience of having to defend against a single [proceeding are not] 'irreparable' in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single [proceeding]." Younger, 401 U.S. at 46.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we conclude that under Sprint's reformulation of the Younger doctrine, abstention is appropriate and no cognizable exception to abstention pertains. It follows inexorably, as night follows day, that the dismissal of this action must be

**Affirmed.**