# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-3119

_____

Indigo LR LLC; Chris Eakin, on behalf of themselves and other similarly situated

*Plaintiffs - Appellants*

v.

Advanced Insurance Brokerage of America Inc., also known as Advanced
Insurance Administration; Matt Lile; Employers Choice Health Plan

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: April 9, 2013
Filed: June 21, 2013

_____

Before LOKEN and GRUENDER, Circuit Judges, and PHILLIPS, District Judge.[1]

_____

GRUENDER, Circuit Judge.

_____

[1]The Honorable Beth Phillips, United States District Judge for the Western District of Missouri, sitting by designation.

Indigo LR, LLC ("Indigo") and one of its employees, Chris Eakin, appeal the district court's[2] dismissal of their claims for breach of contract, negligence, conspiracy, and violations of ERISA and RICO against Advanced Insurance Brokerage of America, also known as Advanced Insurance Administration ("Advanced"), and Matt Lile. For the reasons discussed below, we affirm the district court's dismissal without prejudice for lack of standing.

## I. Background

Indigo operates a clothing store in Little Rock, Arkansas. During the time period relevant to this case, Indigo provided a self-funded health insurance plan for its employees through the Employers Choice Health Plan. The Employers Choice Health Plan was operated by Advanced, a third-party administrator, and Cosmopolitan Life Insurance Company ("Cosmo"), an excess insurer. Although the relationship between Advanced and Cosmo is not clear from the record, Lile was both an owner of Advanced and a minority shareholder of Cosmo.

Under the plan, Indigo paid an annual retention to Advanced in monthly installments. If Indigo submitted a covered claim on behalf of an employee, Advanced paid first on that claim from Indigo's retention fund. To the extent any claim exceeded the amount then residing in Indigo's retention fund, Indigo was required to pay the excess itself and then seek reimbursement under the Cosmo excess policy.

Eakin, an Indigo employee, had knee surgery in July 2008. Indigo timely submitted a claim to Advanced, but payment on the claim was not made due to financial problems at Cosmo. In March 2009, the Arkansas Insurance Commissioner

---

[2]The Honorable D.P. Marshall, Jr., United States District Judge for the Eastern District of Arkansas.

obtained a state-court order placing Cosmo into receivership. The order enjoined any claims or litigation against Cosmo or the receiver. The receiver notified Indigo that, pursuant to the plan, Indigo would have to pay Eakin's medical costs and then submit the bills to the receiver for reimbursement. The receiver was cautiously optimistic that all claims submitted under Cosmo policies could be paid in full eventually. Accordingly, Indigo paid Eakin's medical bills and sought reimbursement from the receiver.

Indigo and Eakin filed suit against Advanced, Cosmo, and Lile in June 2009, but the district court stayed the suit pending resolution of the receivership. Indigo and Eakin were granted a voluntary dismissal of that suit without prejudice. By December 2009, the receiver had paid half of Indigo's submitted claim under the Cosmo policy. Indigo and Eakin filed this lawsuit in August 2010 against Advanced and Lile (but not Cosmo this time), alleging breach of contract, negligence, conspiracy, and violations of ERISA and RICO on the theory that Advanced and Lile had intentionally delayed payments on valid claims. After Advanced and Lile removed the case to federal district court, Indigo and Eakin amended their complaint to plead a class action. At a class certification hearing in September 2011, the receiver testified that he anticipated Indigo's claim under the Cosmo policy would be reimbursed in full. At the close of the receiver's testimony, the court asked him to elaborate on the likelihood that all submitted claims would be paid in full. The receiver explained that there were sufficient funds to cover all submitted claims to date and the period for accepting additional claims was about to expire.

In March 2012, while a decision on class certification was on hold pending settlement efforts, the receiver indeed paid the remaining half of Indigo's submitted claims. Indigo notified the district court of the payment and requested the opportunity for supplemental briefing on its impact. The district court accepted supplemental briefing from both parties, including an affidavit from the receiver stating that all claims submitted under the Cosmo policy had been paid in full. The

district court then dismissed the complaint without prejudice for lack of standing, holding that Indigo's injury had been fully redressed and that Eakin never had a cognizable injury.[3]  On appeal, Indigo argues that, despite receiving full reimbursement from the receiver, it suffered an injury because a monthly retention amount it had paid to Advanced was neither credited towards Eakin's medical costs nor repaid to Indigo.

## II.    Discussion

We review the issue of standing *de novo*. *St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 484 (8th Cir. 2006).  To establish standing, a plaintiff must demonstrate that it suffered "(1) an 'injury-in-fact' that (2) is 'fairly ... trace[able] to the challenged action of the defendant' and (3) is 'likely ... [to] be redressed by a favorable decision' in court." *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

"Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element [required to demonstrate standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.  Here, the dismissal for lack of standing occurred at an atypical stage of the litigation—after an evidentiary hearing and supplemental briefing with additional affidavits in association with a motion for class certification.  A motion for class certification may result in the preliminary resolution of factual disputes, *see Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372

---

[3]At oral argument, counsel for Appellants conceded that Eakin did not suffer an injury in fact because his medical costs were covered in full.  Accordingly, we examine standing with respect only to Indigo.

(8th Cir. 2013), and the district court's factual determinations at this stage are accepted unless they are clearly erroneous, *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005).

The district court credited the receiver's affidavit stating that Indigo was reimbursed for the entirety of the claim it submitted to the receiver for Eakin's medical costs, and Indigo does not dispute this factual finding. Instead, Indigo argues on appeal that "the Receiver . . . refused to give the plans credit for the retention they paid to [Advanced]." In other words, Indigo asserts that (1) it paid a retention amount to Advanced that should have been used to pay a first portion of Eakin's medical bills, (2) Advanced never paid that first portion or returned the retention amount to Indigo, and (3) the receiver also did not reimburse Indigo for that first portion (because Cosmo, an excess insurer, never was liable for that first portion).

The difficulty with Indigo's theory of injury is that Indigo presented no evidence to show that it was out-of-pocket for any retention amount. Indigo argues that the following exchange with the receiver at the class certification hearing supports its theory:

> Q. But my question and the reason we're here is, you've done no analysis to determine in my hypothetical here if this plan had paid their monthly [retention] payments . . ., you're not taking into consideration that payment when determining whether or not to pay -- Cosmo should pay claims, are you?
>
> A. I'm not, no.
>
> Q. All right. So we had at least 64, 74 plans that were paying . . . the retention that Cosmo wasn't able to fund; correct?
>
> A. It's not Cosmopolitan's obligation to fund that.

Q. It was the plan's obligation.

A. The money was paid to [Advanced], which included the retention amount. Any retention amount held by [Advanced] should have been used to pay claims, and then if there was any claims paid after that by the employer, Cosmopolitan was liable under the treaty.

This testimony, however, is simply an acknowledgment by the receiver that retention payments by Advanced to the sixty-plus plans it administered were generally outside Cosmo's purview, not evidence that any particular plan was denied the benefit of its retention payments. Indigo fails to direct us to any evidence in the record that Indigo made the relevant retention payment to Advanced or that Indigo maintained a balance in its retention fund at Advanced that should have been available to cover Eakin's medical expenses. Indigo also fails to direct us to any evidence in the record that a portion of Eakin's medical bills corresponding to the retention amount was omitted from its claim to the receiver. The sole relevant evidence before the district court was the receiver's statement that all claims had been fully reimbursed. Based on this record, we cannot say that the district court clearly erred in finding that the receiver's reimbursement fully redressed any injury suffered by Indigo. *See F.T.C. v. Lundbeck, Inc.*, 650 F.3d 1236, 1239 (8th Cir. 2011) ("If the district court's fact-findings are 'plausible in light of the record viewed in its entirety,' they must be affirmed . . . ." (quoting *Moore v. Forrest City Sch. Dist.*, 524 F.3d 879, 884 (8th Cir. 2008))).[4]

---

[4]Indigo suggests that it did not have an opportunity to introduce specific evidence of its uncredited retention payments. However, the receiver's testimony at the September 2011 hearing made clear that full reimbursement of Indigo's submitted claim was imminent, putting Indigo on notice that its sole claim of injury to that point—less-than-full reimbursement from the receiver—likely would be mooted. Yet, Indigo made no effort to submit evidence that it also was injured by uncredited retention payments. After formal notification from the receiver in March 2012 that Indigo's claim was fully reimbursed, the district court ordered supplemental briefing specifically to address the impact of full repayment, again giving Indigo an

Indigo raises several other arguments in support of standing, but none of them are applicable. First, Indigo argues that defendants cannot moot a putative class action simply by paying the claims of the named plaintiffs. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) ("Requiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions . . . ."). Here, defendants Advanced and Lile did not pay Indigo's claim; the receiver for Cosmo, an independent actor, did. Second, Indigo argues that it successfully pled a cause of action under ERISA, but pleading the elements of an ERISA claim does not obviate the need to establish Article III standing. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009) (noting that a plaintiff "must have both Article III standing and a cause of action under ERISA" to survive dismissal). Third, Indigo argues that standing is present due to the risk of harm from some prospective injury, but Indigo switched to a new health plan in February 2009, and Advanced and Cosmo are out of business, rendering any future harm from repeated conduct highly unlikely. Finally, Indigo argues that a defendant's voluntary cessation of alleged illegal conduct does not automatically moot a case. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). As discussed above, however, the problem here is that Indigo has failed to show how any injury has arisen, or might arise in the future, from the alleged conduct.

Accordingly, we agree with the district court that Indigo has failed to establish standing.

---

opportunity to present evidence of any other claimed injury. Indigo chose not to submit any affidavits, request an evidentiary hearing, or otherwise brief the details of any uncredited retention payments.

## III. Conclusion

For the foregoing reasons, we affirm the district court's dismissal without prejudice for lack of standing.

_____