DICKTEN MASCH PLASTICS, LLC, Plaintiffs,

v.

Angela WILLIAMS, in her official capacity as an Iowa Civil Rights Commissioner; Patricia Lipski in her official capacity as an Iowa Civil Rights Commissioner; Mathew Hosford, in his official capacity as an Iowa Civil Rights Commissioner; Tom Conley, in his official capacity as an Iowa Civil Rights Commissioner; Douglas Oelschlaeger, in his official capacity as an Iowa Civil Rights Commissioner; Lily Lijun Hou, in her official capacity as an Iowa Civil Rights Commissioner; Lawrence Cunningham, in his official capacity as an Iowa Civil Rights Commissioner; and William E. Cooper, Jr. Defendants.

No. 4:16-cv-00104-JEG

United States District Court, S.D. Iowa, Central Division.

Signed August 10, 2016

Amanda Marie Atherton, Frank B Harty, John F. Lorentzen, Nyemaster Goode PC, Des Moines, IA, Erica Nicole Reib, Joseph E. Gumina, O'Neil, Cannon, Hollman, Dejong & Laing S.C., Milwaukee, WI, for Plaintiff.

Molly McConville Weber, Iowa Attorney General, Des Moines, IA, for Defendants.

William E. Cooper, Jr, Des Moines, IA, pro se.

## ORDER

JAMES E. GRITZNER, Senior Judge, UNITED STATES DISTRICT COURT

This matter is before the Court on a Motion for Preliminary Injunction by

Plaintiff Dickten Masch Plastics, LLC (Dickten Masch), ECF No. 12, and a Motion to Dismiss by Defendants Angela Williams, Patricia Lipski, Mathew Hosford, Tom Conley, Douglas Oelschlaeger, Lily Lijun Hou, and Lawrence Cunningham, in their official capacities as Iowa Civil Rights Commissioners (the State Defendants), ECF Nos. 20, 27. The State Defendants and Defendant William E. Cooper (Cooper) (collectively, Defendants), resist the Motion for Preliminary Injunction, and Dickten Masch resists the Motion to Dismiss. The Court held a hearing on both Motions on June 17, 2016. Attorneys John F. Lorentzen and Amanda Marie Atherton were present, representing Dickten Masch; attorney Molly McConville Weber was present, representing the State Defendants; and Cooper, who had not yet hired an attorney for this matter, was also present. The matter is fully submitted and ready for disposition.

## I. BACKGROUND

Dickten Masch operates a manufacturing facility in Ankeny, Iowa, where Cooper was employed from March 2005 until August 21, 2015. Prior to November 2014, Cooper held the position of Maintenance Supervisor, which was an exempt salaried position. On November 3, 2014, Cooper was transferred to a Maintenance Lead position (also referred to as a Maintenance Tech Lead position), which was a non-exempt hourly position. Shortly thereafter, on January 5, 2015, Cooper took short-term disability leave. During this time, Cooper collected benefits pursuant to Dickten Masch's employee short-term disability benefit plan (the Plan). Pursuant to the Plan, salaried employees (such as those in the Maintenance Supervisor position that Cooper previously held) collect 100% of their weekly earnings for up to 26 weeks, while hourly employees (such as those in the Maintenance Lead position to which Cooper was transferred) collect only 50% of their weekly earnings and no more than $300 per week. On July 6, when Cooper's short-term leave was exhausted, Cooper began long-term disability leave. Cooper was unable to return to work and was terminated on August 21, 2015.

On August 28, 2015, Cooper filed a pro se complaint (Cooper's Complaint) with the Iowa Civil Rights Commission (the ICRC, or the Commission), which is authorized by statute to receive and investigate complaints of alleged unfair or discriminatory practices under Iowa law. Cooper's Complaint lists Dickten Masch as the organization that discriminated against him. On Question 6 of Cooper's Complaint, which asks what actions the respondent took that were discriminatory, checkmarks appear next to the "Demotion" and "Undesirable Assignment/Transfer" labels, but not the "Terminated" label. Question 12 of the complaint form asks, "Do you believe you were discriminated against because of a disability, real or perceived?" Cooper answered "Yes" to Question 12 and listed his disability as "Became ill with lung disease." Cooper hand-wrote additional details regarding his demotion in the narrative portion of the complaint form, primarily regarding the timing of various events and the specifics of his medical condition. In that narrative portion, Cooper also wrote: "They chose to make me hourly because salary employees are entitled to 100% salary on short term disability and by demoting me to hourly there is a saving to the company where hourly employees will receive 60% or $300 max per week. The company 'Dickten Masch Plastics LLC' is self insured up to $100,000.00 which when is paid comes out of the bottom line of there monthly expenses." Am. Compl. Ex. 2, at 5, ECF No. 25. Finally, Cooper filed an amendment to his complaint with the ICRC on April 13, 2016, in which he writes that the demotion from Mainte-

nance Supervisor to Maintenance Lead did not accommodate his disability (lung disease), as the latter position had greater physical demands.

The parties dispute what the allegations in Cooper's Complaint mean. According to Dickten Masch, Cooper's Complaint alleges that he was demoted entirely so that Dickten Masch could save money under the Plan. Dickten Masch highlights the narrative portion of Cooper's Complaint, in which Cooper alleges a desire on the part of Dickten Masch to save money under the Plan. By contrast, the State Defendants claim that Cooper's Complaint alleges discrimination based on disability status, pointing primarily to the affirmative response to Question 12, which asks if the complainant believes he or she was discriminated against because of a disability, as well as to the April 13 amendment to Cooper's Complaint.

On September 10, 2015, the ICRC notified Dickten Masch of Cooper's Complaint and requested a response. Dickten Masch responded on October 26, 2015, with a letter that set forth its position taken in this litigation: that Cooper's Complaint alleges discrimination based exclusively on Plan status; and as such, the federal Employee Retirement Income Security Act of 1974 (ERISA) completely preempts any state law claims Cooper may allege, meaning that the ICRC has no jurisdiction to investigate the allegations in Cooper's Complaint.[1] The ICRC issued a screening analysis on February 23, 2016, rejecting Dickten Masch's jurisdictional arguments and referring the matter for investigation by the Commission. Dickten Masch then filed suit in this Court on April 7, 2016, and moved for preliminary and permanent injunctive relief as well as expedited de-

claratory relief on May 18, 2016. The State Defendants filed their Motion to Dismiss on June 2, 2016.

Following the State Defendants' Motion to Dismiss, Dickten Masch filed an Amended Complaint. In the Amended Complaint, Dickten Masch pursues injunctive relief against the State Defendants in their official capacities as Commissioners of the ICRC. Dickten Masch alleges that it is the administrator and fiduciary of the Plan, which by its terms is governed by ERISA. It argues that the only claim set forth in Cooper's Complaint is that Cooper was demoted so that Dickten Masch could realize savings under the Plan, and thus any action taken by the Commissioners to investigate or otherwise adjudicate the claim(s) in Cooper's Complaint, on behalf of a state authority (the ICRC), violates the preemption provisions of ERISA. Dickten Masch requests that this Court enjoin the State Defendants from investigating or otherwise proceeding with Cooper's Complaint. Dickten Masch also requests declaratory relief against both Cooper and the State Defendants. Specifically, Dickten Masch requests a declaration that Cooper's Complaint only sets forth a claim for interference with ERISA rights under 29 U.S.C. § 1140, and that the claim may only be brought in federal court.

Although the State Defendants' Motion to Dismiss was filed prior to the filing of Dickten Masch's Amended Complaint, the State Defendants renewed their motion with a supplemental brief shortly thereafter to address the Amended Complaint. The State Defendants argue, first, that Dickten Masch fails to establish subject matter jurisdiction because Dickten Masch

---

1. Dickten Masch also argued in its letter to the ICRC that Cooper's Complaint was time-barred pursuant to a six-month limitations period in his employee agreement with Dick-

ten Masch. The ICRC rejected this argument in its screening analysis, and Dickten Masch has not made any such arguments in this federal action.

fails to plead a federal question and also because it lacks Article III standing. The State Defendants also argue that the Amended Complaint should be dismissed for failure to state a claim. Finally, the State Defendants argue that this Court should abstain from hearing Dickten Masch's claims pursuant to Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

## II. DISCUSSION

### A. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. Mamot Feed Lot and Trucking v. Hobson, 539 F.3d 898, 902 (8th Cir.2008). This Court thus has a special obligation to consider whether it has subject matter jurisdiction before it proceeds with the case, and it must dismiss the action if it finds that subject matter jurisdiction is not present. Hart v. United States, 630 F.3d 1085, 1089 (8th Cir.2011). The burden of proving federal jurisdiction rests on the party seeking to establish it. Great Rivers Habitat All. v. Fed. Emergency Mgmt. Agency, 615 F.3d 985, 988 (8th Cir.2010).

### 1. Federal Question Jurisdiction

Dickten Masch alleges that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.[2] "[A] district court's federal question jurisdiction extends only to 'civil actions arising under the Constitution, laws, or treaties of the United States.'" Mamot, 539 F.3d at 902 (quoting 28 U.S.C. § 1331). To determine whether a claim arises under federal law, courts are guided by the well-pleaded complaint rule. Aetna Health, Inc. v. Davila, 542 U.S. 200, 207, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). In other words, federal question jurisdiction exists "in those cases in which a well-pleaded complaint establishes either that federal law creates the

cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); see also Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) ("It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law."). Moreover, "the existence of a federal defense normally does not create statutory 'arising under' jurisdiction"; instead, the plaintiff's complaint alone must establish that the case arises under federal law. Davila, 542 U.S. at 207, 124 S.Ct. 2488. Nor will a complaint plead a federal question where "the alleged claim ... clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." Bell v. Hood, 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

Of particular relevance here, "[f]ederal pre-emption is ordinarily a federal defense to a plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint." Metro. Life, 481 U.S. at 63, 107 S.Ct. 1542. However, certain federal statutes can completely preempt certain causes of action, such that "'a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.' ERISA is one of these statutes." Davila, 542 U.S. at 208, 124 S.Ct. 2488 (quoting Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003)). Because Congress created through ERISA a "'comprehensive legislative scheme'" that provides for "'an integrated system of procedures for enforcement'" of claims relating to employee benefit plans, any cause of action

---

**2.** Defendants do not dispute personal jurisdiction or venue.

that "duplicates, supplements, or supplants the ERISA civil enforcement remedy" is automatically preempted. Id. at 208–09, 124 S.Ct. 2488 (quoting Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 147, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). This "complete preemption" doctrine means that state-law claims within the scope of ERISA's civil enforcement provisions, 29 U.S.C. § 1132(a), actually present a federal question and are removable to federal court. Id.; see also Franchise Tax Bd., 463 U.S. at 24, 103 S.Ct. 2841 ("[I]f a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law.").

McLain v. Andersen Corp., 567 F.3d 956 (8th Cir.2009), illustrates how this complete preemption doctrine can operate in the ERISA context and also helps explain certain important ERISA provisions. In McLain, a former employee sued his employer in Minnesota state court for multiple violations of the Minnesota Human Rights Act (MRHA). Id. at 963. One of the employee's claims was a claim for unlawful interference with pension benefits, since under the MHRA, unlawful age discrimination can include actions taken to interfere with an employee's pension rights. Id. at 964. The employer removed the case to federal court on the basis that ERISA preempted the pension-interference claim. Id. at 963. The Eighth Circuit held that this claim by the employee, while pled under state law, was within the scope of ERISA's enforcement provisions, thus triggering complete preemption and raising a federal question sufficient to support removal jurisdiction. Id. at 964. Specifically, the employee's claim fell under 29 U.S.C. § 1132(a)(3), which provides a cause of action in federal court

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Id. In McLain, the MHRA cause of action by the employee (who qualified as a "participant, beneficiary, or fiduciary" under § 1132(a)(3)), overlapped with an action under ERISA § 1132(a)(3) that would enforce violations of another provision of ERISA ("this subchapter"). Specifically, the employee's allegations also pled a violation of 29 U.S.C. § 1140, which "specifically prohibits persons from discriminating against plan participants 'for the purpose of interfering with the attainment of any right to which such participant may become entitled.'" McLain, 567 F.3d at 964 (quoting 29 U.S.C. § 1140). Thus, federal question jurisdiction supplied a basis for removal because the state claims sought vindication of "a right expressly guaranteed by [§ 1140] and exclusively enforced by [§ 1132(a)(3)]." Id. at 965 (quoting Ingersoll–Rand Co. v. McClendon, 498 U.S. 133, 145, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)).

But Dickten Masch is not seeking to remove an action from state court. All Cooper has done is file an administrative complaint with the ICRC, and all the ICRC has done is confirm that it will investigate Cooper's Complaint in the future. Because there is no lawsuit in state court to remove, Dickten Masch may not avail itself of complete preemption and "recharacterize a state law complaint displaced by [§ 1332(a) ] as an action arising under federal law." See Metropolitan Life, 481 U.S. at 64, 107 S.Ct. 1542. Dickten Masch must instead supply its own basis for federal jurisdiction as a plaintiff. In doing so, Dickten Masch sails into uncharted waters.

Dickten Masch alleges that it has a cause of action under 29 U.S.C.

§ 1132(a)(3). As noted above, this provision allows "a participant, beneficiary, or fiduciary" to "enjoin any act or practice which violates any provision of this subchapter." 29 U.S.C. § 1132(a)(3). Dickten Masch alleges it is a fiduciary of the Plan. The act or practice that Dickten Masch seeks to enjoin is the investigation of Cooper's Complaint by the State Defendants. And the provision of ERISA that Dickten Masch alleges the investigation violates is not § 1140 (as in McLain), but another provision within §1132 specifically, 29 U.S.C. § 1132(e)(1). That provision reads, in relevant part: "[T]he district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(e)(1).

To summarize, Dickten Masch alleges that it is suing in federal court to vindicate a (procedural) right granted by ERISA to have any of its (substantive) obligations under ERISA decided in federal court.[3] Dickten Masch argues that the State Defendants violate § 1132(e)(1) by investigating Cooper's Complaint because Cooper's Complaint is an ERISA claim and an ERISA claim only. It argues that much like the employee's state-law action in McLain, Cooper's Complaint sets forth a claim that falls solely within the cause of action set forth in 29 U.S.C. § 1140, which prohibits discrimination made for the purpose of interference with ERISA plan rights.[4] Any assertion of jurisdiction by a state agency (the ICRC) over this claim, Dickten Masch argues, violates § 1132(e)(1).

Can Dickten Masch establish jurisdiction on this basis? It is not obvious that § 1132(e)(1) offers the parties the sort of right that can be vindicated in a federal lawsuit. In contrast, the phrasing of § 1140 clearly grants certain rights to participants and beneficiaries of ERISA plans. Section 1140 says, "It shall be unlawful for any person to ... discriminate against a participant or beneficiary." 29 U.S.C. § 1140. Section 1140 also explicitly states that its provisions may be enforced pursuant to Section 1132. Id. Section 1132(e)(1), on the other hand, reads, "[T]he district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter ...." 29 U.S.C. § 1132(e)(1). Does that mean that Dickten Masch, the alleged target of "civil actions under [ERISA]," id.

**3.** Wright Elec., Inc. v. Minn. State Bd. of Elec., 322 F.3d 1025 (8th Cir.2003), cited by the State Defendants, does not foreclose this type of federal claim. In Wright, the plaintiff brought a claim to bar enforcement of a state statute pursuant to the Supremacy Clause. Id. at 1028. The Eighth Circuit noted that the plaintiff was "not seeking enforcement of ERISA or plan terms" pursuant to § 1132(a)(3) because the program at issue in the case was not an ERISA plan. Id. at 1027–28.

**4.** Here is how Dickten Masch puts it in its brief supporting its motion for a preliminary injunction:

Cooper's Civil Rights Complaint alleges a straightforward claim of interference under section 510 of ERISA; he alleges that Dickten Masch had a benefits-defeating motive in transferring him from a salaried-exempt position to an hourly non-exempt position in order to save money under its ERISA-covered plan. Cooper's Complaint and Amendment allege a *prima facie* case of section 510 interference: (1) the alleged act (discrimination), (2) the alleged harm (deprivation of plan benefits), and (3) the alleged motivation (to interfere with his attainment of benefits) that form the basis of an ERISA section 510 claim. The law is well-established that a claim based upon a benefits defeating motive, like Cooper's claim, falls squarely within the ambit of ERISA section 510. The problem for Cooper is that he has filed his action for interference under ERISA section 510 in the wrong forum.

Dickten Masch Br. in Supp. of Mot. for Prelim. Inj. at 8, ECF No. 12-1.

not only possesses a right under ERISA to have those civil actions take place in federal court, but also that Dickten Masch can initiate an action in federal court *solely* to vindicate that right?[5] The State Defendants argue that Dickten Masch cannot.

The State Defendants imply that a party cannot "violate" Section 1132(e)(1) in a manner that would trigger a cause of action under Section 1132(a)(3) for a federal plaintiff. The State Defendants characterize Section 1132(e)(1) as a mere jurisdictional provision and (correctly) note that Dickten Masch cites no cases in which a plaintiff establishes the existence of a federal question under Section 1132(a)(3) based on an alleged violation of Section 1132(e)(1). But Section 1132(a)(3)'s cause of action to redress violations of "any provisions of this subchapter" contains no exception for so-called "jurisdictional provi-

sions."[6] By contrast, "ERISA carefully enumerates the parties entitled to seek relief under [§ 1132]; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action." Franchise Tax Bd., 463 U.S. at 27, 103 S.Ct. 2841. It is thus fair to assume that had Congress wanted to limit the provisions of ERISA for which a violation confers a cause of action under § 1132(a)(3), it would have done so. Nor does the lack of an express prohibition against a particular act or practice, such as the proscription against benefits-defeating discrimination set forth in § 1140, mean that § 1132(e)(1) cannot be "violated." Some courts have interpreted pleadings that allege a violation of 29 U.S.C. § 1144(a), another ERISA preemption provision that is phrased similarly to § 1132(e)(1),[7] to support a 1132(a)(3) cause

---

5. As noted above, the existence of a federal defense does not suffice to create federal question jurisdiction. Davila, 542 U.S. at 207, 124 S.Ct. 2488. Thus, to establish subject matter jurisdiction here, Dickten Masch bears the burden to demonstrate that § 1132(a)(3) offers the right to bring suit to pursue violations of § 1132(e)(1).

6. 1975 Salaried Ret. Plan for Eligible Emps. of Crucible, Inc. v. Nobers, 968 F.2d 401, 409–10 (3d Cir.1992), cited by the State Defendants, does not alter this analysis. In a footnote, the Third Circuit cited a Fifth Circuit case that "questioned whether a state court suit truly 'violates' 29 U.S.C. § 1132(e)(1), as the verb is used in 29 U.S.C. § 1132(a)(3)." Id. at 409 n. 8 (citing Total Plan Servs., Inc. v. Tex. Retailers Ass'n, 925 F.2d 142, 144 (5th Cir.1991)). But Nobers and Total Plan both concern application of the Anti-Injunction Act, 28 U.S.C. § 2283, not a federal-question determination. Nobers, 968 F.2d at 405; Total Plan Servs., 925 F.2d at 144. The Anti-Injunction Act, which prohibits federal courts in certain circumstances from enjoining "proceedings in a State court," 28 U.S.C. § 2283, does not apply here, where there are no proceedings in a state court to enjoin. In determining whether an exception to the Anti Injunction Act applied, the Fifth Circuit in Total Plan Servs. was called upon

to analyze "whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." Total Plan Servs., 925 F.2d at 144 (quoting Mitchum v. Foster, 407 U.S. 225, 238, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972)). This Anti Injunction Act analysis sheds little light on the antecedent question of whether Dickten Masch's complaint pleads a cause of action arising under federal law, and it is worth noting that neither of the courts in Total Plan Servs. and Nobers dismissed those actions for lack of subject matter jurisdiction. See Nobers, 968 F.2d at 405 (affirming denial of injunctive relief in case where discovery remained ongoing for declaratory relief claims); Total Plan Servs., 925 F.2d at 143 (affirming dismissal for failure to state a claim).

7. Section 1144(a), like § 1132(e)(1), lacks clear prohibitory language. Section 1144(a) reads, in part:

[T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title....

of action in federal court. As the Fourth Circuit reasoned in Denny's Inc. v. Cake, 364 F.3d 521 (4th Cir.2004):

> Section 1132(a)(3)(B) thus permits an ERISA fiduciary to bring an action to "enforce any provisions of this subchapter." Indisputably, "this subchapter" refers to subchapter I of Chapter 18 of the United States Code, which codified Title I of ERISA and includes 29 U.S.C. §§ 1001 1191. "[T]his subchapter" thus clearly contains ERISA's preemption provision, 29 U.S.C. § 1144. The plain language of § 1132(a)(3)(B) therefore appears to permit an ERISA fiduciary to bring an action to "enforce" § 1144 a "provision of this subchapter.

Id. at 524–25 (citation omitted); see also Sherfel v. Gassman, 899 F.Supp.2d 676, 693 (S.D.Ohio 2012) ("An action such as this one seeking declaratory and injunctive relief on the grounds of ERISA pre-emption may be brought by Plan fiduciaries pursuant to 29 U.S.C. § 1132(a)(3)."). The Court finds this reasoning persuasive.

Dickten Masch has pled a federal question. It alleges that § 1132(a)(3) provides a cause of action that allows it to vindicate a right provided by § 1132(e)(1) to have its obligations under ERISA determined in federal court. It requests a remedy injunctive relief against any contrary exercise of jurisdiction by the State Defendants that is granted by § 1132(a)(3) and is fairly tailored toward addressing the alleged violation. See 13D Charles A. Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, Federal Practice and Procedure § 3562 (3d ed. 2008) ("Courts will uphold jurisdiction if federal law grants the substantive right and it is held that a federal remedy fairly may be implied from that right."). Certainly, federal courts have not fleshed out what it means to sue for relief under § 1332(a)(3) based on a violation of § 1132(e)(1), and perhaps this cause of action proves to be one whose rights are narrow in scope or difficult to vindicate in practice. Nor does this conclusion answer whether Dickten Masch's complaint actually states a claim for relief under the cause of action it has pled.[8] See Carlson v. Principal Fin. Group, 320 F.3d 301, 305–06 (2d Cir.2003) ("Whether a federal court pos-

---

29 U.S.C. 1144(a). Dickten Masch does not allege a violation of § 1144(a) in this case.

8. The State Defendants argue that "[i]t is Plaintiff's burden to establish subject matter jurisdiction, not the State Defendants' burden to negate the existence of a § 1132(e) violation." State Def. MTD Reply Br. at 2, ECF No. 31. But Dickten Masch's burden to establish subject matter jurisdiction only requires it to establish it has pled a claim for relief "arising under" federal law to raise a federal question, it does not need to prove that § 1132(e)(1) was actually violated under the facts of this case. See Ali v. Ramsdell, 423 F.3d 810, 813 (8th Cir.2005) ("[T]he district court had subject matter jurisdiction in this case, even if Ali's § 1983 claims were properly dismissed prior to trial. The complaint clearly alleged violations of her Fourth Amendment and due process rights."); Reeve v. Oliver, 41 F.3d 381, 383 n. 2 (8th Cir.1994) ("A federal court does not lack jurisdiction merely because a complaint fails to state a

cause of action.") (citing Bell, 327 U.S. at 682, 66 S.Ct. 773); Cont'l Cablevision of St. Paul, Inc. v. U.S. Postal Serv., 945 F.2d 1434, 1439 (8th Cir.1991) ("Unless a complaint is frivolous on its face, a colorable allegation of a federal right suffices to establish arising-under jurisdiction, regardless of whether, ultimately, a federal cause of action is found."). The federal question pled in the Amended Complaint in this case is neither "frivolous on its face," see Cont'l Cablevision, 945 F.2d at 1439, nor "immaterial and made solely for the purpose of obtaining jurisdiction or ... wholly insubstantial and frivolous," see Bell, 327 U.S. at 682–83, 66 S.Ct. 773.

Similarly, the State Defendants argue that jurisdiction is improper because Cooper has not yet filed a "civil action" as defined in § 1132(e)(1). Whether the ICRC proceedings qualify as a "civil action" is an argument that the allegations in the Amended Complaint fail to state a claim for relief and will be addressed below.

sesses federal-question subject matter jurisdiction and whether a plaintiff can state a claim for relief under a federal statute are two questions that are easily, and often, confused."). The Court will address that separate question below.

Dickten Masch also seeks a declaratory judgment against all Defendants, including Cooper, that Cooper's Complaint violates § 1132(e)(1) because it states a claim for interference with ERISA rights under 29 U.S.C. § 1140. "Federal courts may entertain claims for declaratory relief under 28 U.S.C. § 2201 so long as they raise a federal question.... If a declaratory judgment action requires resolution of an issue of federal law or precludes the assertion of a federal right by a responding party, there is jurisdiction over it." Gaming World Int'l, Ltd. v. White Earth Band of Chippewa Indians, 317 F.3d 840, 847 (8th Cir.2003) (citations omitted). As with Dickten Masch's claim for injunctive relief, the claim for declaratory relief calls upon this Court to interpret § 1132(e)(1), raising a question of federal law.

## 2. Article III Standing

The State Defendants also argue that Dickten Masch lacks Article III standing. The State Defendants claim that any investigation of Cooper's Complaint does not give rise to an injury in fact on the part of Dickten Masch and dispute that Dickten Masch has a "legally-protected interest in having its duties under ERISA be determined under ERISA and in federal court rather than in state agency proceedings." State Def. MTD Br. 6, ECF No. 20-1 (quoting Dickten Masch Br. in Supp. of Mot. for Prelim. Inj. at 13, ECF No. 12-1). Dickten Masch argues that it suffers actual injury from any improper exercise of jurisdiction over Cooper's ERISA claims by the State Defendants. It also argues that the requirement of injury in fact may be lessened for violations of ERISA statutory rights.

"[I]n order to invoke the power of a federal court, a plaintiff must present a 'case' or 'controversy' within the meaning of Article III of the Constitution." Braden v. Wal–Mart Stores, Inc., 588 F.3d 585, 591 (8th Cir.2009). Standing is a "jurisdictional prerequisite" that the Court must address before ruling on the merits. City of Clarkson Valley v. Mineta, 495 F.3d 567, 569 (8th Cir.2007). In fact, "standing is a 'threshold inquiry' that 'eschews evaluations on the merits.'" Id. (quoting McCarney v. Ford Motor Co., 657 F.2d 230, 233 (8th Cir.1981)).

Article III standing has three basic requirements. The plaintiff must suffer an injury in fact, the injury must be traceable to the defendant's actions, and the injury must be redressable by the court. Indigo LR LLC v. Advanced Ins. Brokerage of Am., Inc., 717 F.3d 630, 633 (8th Cir.2013). "[E]ach element [required to demonstrate standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Id. (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)) (second alteration in original). "[W]hen a motion to dismiss is made on standing grounds the standing inquiry must, as a prerequisite, be done in light of the factual allegations of the pleadings." City of Clarkson Valley, 495 F.3d at 570.

"'Injury in fact' is an invasion of a legally cognizable right. Whether a plaintiff has shown such an injury 'often turns on the nature and source of the claim asserted.'" Braden, 588 F.3d at 591 (quoting Warth v. Seldin, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

The claimed injury must be "actual or imminent, not conjectural or hypothetical" and must concern a "concrete and particularized" legal interest. Lujan, 504 U.S. at 560, 112 S.Ct. 2130 (internal quotations omitted).

As fiduciary of the Plan, Dickten Masch claims certain rights under ERISA. It claims a right to have its rights and obligations under ERISA decided in proceedings in federal court, rather than through state administrative proceedings. It alleges that the State Defendants infringe on that right by asserting jurisdiction over Cooper's Complaint which, of course, Dickten Masch alleges sets forth an ERISA claim and only an ERISA claim. Dickten Masch argues that the alleged violation of this right will injure it because "it will incur expenses in further responding to the Commission's investigation, participating in hearings, and otherwise protecting its interest before the Commission, and it may even become subject to a finding of probable cause or other enforcement action." Dickten Masch Br. in Supp. of Mot. for Prelim. Inj. at 17, ECF No. 12-1.

Dickten Masch also argues that the ICRC threatens to infringe upon Dickten Masch's rights as fiduciary of the Plan to administer the Plan at its discretion. To envision how the ICRC might injure Dickten Masch in this way, one should first assume (as the Amended Complaint claims) that Cooper's Complaint concerns *only* a claim for benefits-defeating discrimination under ERISA. Then, imagine that the ICRC, after an investigation of those allegations, orders a remedy on some other purported legal grounds, such as disability discrimination even though in this hypothetical Cooper's Complaint does not state a claim for disability discrimination but does make a claim that falls within § 1140 of ERISA. Since Cooper's Complaint indicated that his demotion/job transfer was the only adverse action he suffered, perhaps the ICRC orders Cooper to be reinstated to his previous salaried position (Maintenance Supervisor), or perhaps the ICRC orders damages covering the difference in short-term disability benefits between the salaried Maintenance Lead position and the hourly Maintenance Tech position. At oral argument, the parties discussed the extent to which the ICRC even possessed the ability to affect the Plan and/or its administration. After all, the ICRC does not possess the power to redress violations of ERISA. See Iowa Code § 216.5 (listing the statutory powers of the ICRC). The State Defendants could not, however, confirm that the ICRC lacked the power to grant remedies for violations of Iowa law that would affect the Plan.

The Southern District of Ohio considered a similar situation in Sherfel v. Gassman, 748 F.Supp.2d 776 (S.D.Ohio 2010), a case involving claims based on ERISA preemption relating to potential enforcement actions by a Wisconsin state administrative authority. Id. at 778, 780. In Sherfel, the plaintiffs claimed that the Wisconsin agency, which administers the Wisconsin Family and Medical Leave Act (WFMLA), threatened to initiate enforcement actions against the plaintiffs for claims allegedly preempted by § 1144 of ERISA. Id. at 779–780. The plaintiffs alleged that they would suffer injury "because they will be forced to expend valuable time and resources defending their position during hearings over which the State of Wisconsin will improperly assert jurisdiction." Id. at 784; see also id. ("[P]laintiffs have alleged as part of their injury in this case that unless an injunction is issued, they will be required to defend WFMLA claims in Wisconsin administrative proceedings, and that the existence of those proceedings, insofar as they determine eligibility for benefits under ERISA, poses a conflict with federal law.") (emphasis added). On a

motion to dismiss, the district court concluded that the plaintiffs had sufficiently alleged an injury in fact. Id.

■■■ If Dickten Masch is correct here that the ICRC's administrative investigation of Cooper's Complaint violates federal law, then Dickten Masch could suffer at least two types of injuries in fact: injuries arising from responding to the investigation, and injuries arising from any remedies ordered by the state authority. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Lujan, 504 U.S. at 561, 112 S.Ct. 2130 (quoting Lujan v. Nat'l Wildlife Fed., 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). Dickten Masch sufficiently alleges an actual or imminent injury in fact.

■■■ At oral argument, the State Defendants argued that it was improper to assume for standing purposes that ERISA preempts the ICRC's investigation. However, it is proper for this Court to assume the validity of the plaintiff's legal theory for purposes of evaluating whether a plaintiff has pled an injury in fact. See Hutterville Hutterian Brethren, Inc. v. Sveen, 776 F.3d 547, 554 (8th Cir.2015) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal.") (quoting Warth, 422 U.S. at 500, 95 S.Ct. 2197); Nat. Res. Def. Council v. E.P.A., 25 F.3d 1063, 1067 (D.C.Cir.1994) ("The question at that threshold is not whether the allegation of injury is one upon which they will ultimately fail, but merely whether it states an injury cognizable in an Article III court.").

The Court finds that the other two elements of standing are met as well. The claimed injuries, specifically those arising from the costs of responding to an investigative proceeding, are directly traceable to the State Defendants' conduct. The State Defendants would preside over any ICRC investigation and would order any related remedies. And the injuries are fairly traceable to Cooper as well for purposes of the declaratory relief claim, since Cooper's administrative filing is the subject of the ICRC's investigation.

Similarly, the declaratory and injunctive relief requested in this case would redress Dickten Masch's claimed injuries by preventing the State Defendants from proceeding with an investigation that Dickten Masch alleges would violate federal law. With respect to Cooper, Dickten Masch only requests declaratory relief. As Dickten Masch alleges in Count I of the Amended Complaint, a declaration that the State Defendants' investigation violates federal law would require this Court to find that Cooper's Complaint "is a claim for interference with ERISA rights under 29 U.S.C. § 1140." This declaratory relief would redress the injury claimed by Dickten Masch in one of two ways: either Cooper would be required to bring the same claims alleged in Cooper's Complaint in federal court, or Cooper could allege different claims before the ICRC that do not fall under ERISA § 1140. Either way, the injury that Dickten Masch claims arising from a violation of its right to have its ERISA rights and duties determined in federal court would be redressed.

## B. Motion to Dismiss for Failure to State a Claim

■■■ Dickten Masch has surmounted the thresholds of establishing federal question jurisdiction and Article III standing by relying heavily on its assumption that the "sole claim" set forth in Cooper's Complaint falls under § 1140 of ERISA. See Am Compl. ¶ 36. Dickten Masch has established that 29 U.S.C. § 1132(a)(3) offers a cause of action for alleged violations of 29 U.S.C. § 1132(e)(1), and that the State De-

fendants' investigation of Cooper's Complaint threatens an actual injury for Dickten Masch that can be redressed by the requested relief. But the State Defendants also argue that Dickten Masch fails to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6). It is here that the Amended Complaint, though legally creative, ultimately proves deficient.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679, 129 S.Ct. 1937. Documents attached to the complaint are considered part of the "face of the complaint." C.H. Robinson Worldwide, Inc. v. Lobrano, 695 F.3d 758, 764 (8th Cir.2012).

Section 1132(e)(1) states that the federal courts have exclusive jurisdiction of "civil actions under this subchapter" that is, under ERISA brought by "the Secretary or by a participant, beneficiary [or] fiduciary." 29 U.S.C. § 1132(e)(1). By its terms, § 1132(e)(1) does *not* apply to civil actions that do not arise under ERISA. Where a civil action in a state forum arises under legal bases other than ERISA, § 1132(e)(1) does not prohibit that action from proceeding on those non-ERISA claims in that forum.

Contrast § 1132(e)(1) with § 1144(a), another and more commonly invoked ERISA preemption provision. Section 1144(a) preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" subject to ERISA. 29 U.S.C. § 1144(a). To apply § 1144(a), a court must find that an otherwise valid claim arising under state law is preempted because it relates to an ERISA plan. For example, in Sherfel, the district court concluded that a provision of the WFMLA was preempted by ERISA to the extent it could be invoked to require payment of benefits pursuant to an ERISA plan. Sherfel, 899 F.Supp.2d at 701. The district court thus permanently enjoined the defendant state officials from processing or investigating WFMLA law claims seeking payment of such benefits, beyond any investigation needed to verify the nature of the Wisconsin law claim. Id. at 712.

But Dickten Masch does not claim that Cooper's Complaint is preempted pursuant to § 1144(a). Its federal action under § 1132(a)(3) seeks to enjoin a violation of § 1132(e)(1). Dickten Masch alleges that Cooper's Complaint arises completely under ERISA and thus is subject to jurisdiction exclusively in federal court. Dickten Masch argues that a plain reading of Cooper's Complaint, as amended, makes it clear that Cooper alleges an ERISA § 1140 claim and no other possible claims. As Dickten Masch explains in its brief supporting its motion for a preliminary injunction:

> There is no question that Dickten Masch's STD Plan and the rights it created are the sole basis for Cooper's alleged cause of action related to his transfer. Cooper's claim is premised upon the theory that Dickten Masch transferred him to intentionally deprive him of a percentage of short-term disability benefits that he would have received, had he remained a non-exempt employee, in order to save money.

Dickten Masch Br. in Supp. of Mot. for Prelim. Inj. at 7, ECF No. 12-1. Similarly,

the Amended Complaint, to which Cooper's Complaint is attached, asserts that "[t]he sole claim in Cooper's Civil Rights Complaint is that Dickten Masch changed him from an exempt salaried to a non-exempt hourly position in order to pay him less in short-term disability benefits under the Plan." Am. Compl. ¶ 36. The State Defendants argue that Cooper's Complaint is actually a complaint about disability discrimination and thus does not fall "under this subchapter."[9]

However, Cooper's Complaint simply cannot support Dickten Masch's preferred interpretation; and on this record the Court cannot engage in the same essential assumption in applying the plausibility standard. On Cooper's Complaint, Question 12 asks, "Do you believe you were discriminated against because of a disability, real or perceived?" Am. Compl. Ex. 2, at 2 (emphasis added). Cooper answered "Yes" to Question 12 and listed his disability as "Became ill with lung disease." Id. In the context of a form-based civil rights complaint process, this is an allegation of disability discrimination.

Dickten Masch argues that a claim for disability discrimination requires allegations of discriminatory motivation, which is correct. See Hamer v. Iowa Civil Rights Com'n, 472 N.W.2d 259, 264 (Iowa 1991) (prima facie case for discrimination requires allegation that adverse employment action be "based on an impermissible consideration"). But this Court cannot conclude that Cooper's Complaint fails to do this. The word "because" in Question 12 implies a causal relationship between Cooper's alleged disability and the alleged adverse action, so a response in the affirmative would naturally seem to constitute an allegation of discriminatory intent. Am. Compl. Ex. 2, at 2; see also id. at 5 ("Because my lung disease was in a continued medical work up and had future appointments the decision to make me hourly was intentional and made with the personal medical information I had [supplied].") (emphasis added). If this language specifically, the use of "because" does not suffice to constitute an allegation of discriminatory intent, then neither do the allegations in the narrative portion of Cooper's Com-

---

**9.** The State Defendants also argue that Dickten Masch has not alleged the existence of a "civil action" as the term is used in § 1132(e)(1). Though not defined in this statute, the term "civil action" is most commonly used in other contexts to refer to proceedings initiated before a court. See Iowa Code § 611.2 ("A civil action *is a proceeding in a court of justice* in which one party, known as the plaintiff, demands against another party, known as the defendant, the enforcement or protection of a private right, or the prevention or redress of a private wrong.") (emphasis added); see also Kelso v. Noble, 1998 WL 552831, at *3 (6th Cir. Aug. 19, 1998) ("[W]e think it clear that a 'civil action' requires the involvement of the courts in a matter presented for trial."); E.E.O.C. v. Ill. State Tollway Auth., 800 F.2d 656, 660 (7th Cir.1986) ("Congress uses the term 'civil action' in specific reference to a lawsuit."); Key Buick Co. v. Comm'r., 613 F.2d 1306, 1307–09 (5th Cir.

1980) (holding that the term "civil action or proceeding" used at 42 U.S.C. § 1988 (1976), amended by Pub. L. 96–481 § 205, 94 Stat. 2321 (1980), referred to litigation in court and not agency proceedings). Black's Law Dictionary defines a "civil action" as "[a]n action brought to enforce, redress, or protect a private or civil right; a noncriminal litigation." Action, Black's Law Dictionary (10th ed. 2014); see also Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."). In the instant case, Cooper filed a complaint with the ICRC, not in state or federal court, and the ICRC has made an initial determination that Cooper's Complaint will receive further investigation. Though the Court does not decide the pending motion to dismiss on this ground, the Court also could not conclude that the filing of a complaint with the ICRC establishes the existence of a "civil action" as the term is used in § 1332(e)(1).

plaint relating to the Plan, which Dickten Masch argues constitute an allegation of ERISA discrimination. These allegations use a causal construction very similar to Question 12. Compare Am. Compl. Ex. 2, at 2 (Q: "Do you believe you were discriminated against because of a disability, real or perceived?" A: "Yes"), with id. at 5 ("[T]hey chose to make me hourly because salary employees are entitled to 100% salary on short term disability and by demoting me to hourly there is a saving to the company.") (emphasis added). Dickten Masch does not attempt to distinguish these allegations, other than to say that one is in the narrative and one is not a distinction without a difference. At most, on the face of Cooper's Complaint, the motivation allegations stand in equipoise.[10] Ultimately, a plain reading of the document attached to the Amended Complaint renders implausible any conclusion that Cooper's Complaint *only* concerns ERISA and does not allege disability discrimination.

Viewed in context, the statements in the narrative regarding the Plan are not enough to establish that Cooper's Complaint arises under ERISA and fits within § 1132(e)(1). Cooper's Complaint is a pro se filing before a State administrative agency the completed version of a four-page form. "Even in the formal litigation context, *pro se* litigants are held to a lesser pleading standard than other parties." Fed. Exp. Corp. v. Holowecki, 552 U.S. 389, 402, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008). This caution is even more warranted for administrative filings where "it appears *pro se* filings may be the rule, not the exception." See id.; see also Cobb. v. Stringer, 850 F.2d 356, 359 (8th Cir.1998) ("The purpose of filing a charge with the

EEOC is to provide the Commission an opportunity to investigate and attempt a resolution of the controversy .... Because persons filing charges with the EEOC typically lack legal training, those charges must be interpreted with the utmost liberality."). Moreover, documents attached to the Complaint also show that the ICRC has thus far interpreted Cooper's Complaint to allege disability discrimination and *not* ERISA discrimination, and that the ICRC plans to investigate Cooper's Complaint only in relation to the former. Am. Compl. Ex. 3 at 6 ("[The ICRC] lacks jurisdiction and expertise to consider the provisions of the benefit plan itself, and that consideration is more appropriately left to an analysis based in ERISA. It is within the purview of this office's jurisdiction to determine whether an employer has acted improperly based on a protected characteristic."); id. at 9 ("Further investigation is necessary to address the merits of Complainant's complaint as it relates to the asserted impermissible consideration of his disability in Respondent's decision to demote him.") (emphasis added). And the ICRC's statutory mandate does not grant it the power to investigate ERISA violations, anyway. See Iowa Code § 216.5. Given all this, and given that this Court must reject Dickten Masch's argument that Cooper's Complaint could only be interpreted to solely allege an ERISA violation, the Amended Complaint does not plausibly claim that the ICRC's investigation is or threatens to become a "civil action under this subchapter" according to § 1132(e)(1).

Thus, the Court must conclude that the Amended Complaint does not state a claim for injunctive or declaratory relief under 29 U.S.C. § 1132(a)(3) to enforce a violation of 29 U.S.C. § 1132(e)(1).

---

**10.** Though it is not necessary to consider the Amendment to Cooper's Complaint, which was filed with the ICRC after Dickten Masch laid forth its ERISA preemption arguments before the ICRC, it is worth noting that the Amendment contains additional allegations that speak to a possible disability discrimination claim. Am. Compl. Ex. 4.

Dickten Masch has not plausibly alleged that Cooper's Complaint (and the ICRC's subsequent investigation) arises "under this subchapter," that is, wholly under 29 U.S.C. § 1140. Rather, Dickten Masch's proposed interpretation of Cooper's Complaint contradicts the allegations on the face of that document and solicits this Court to apply a level of scrutiny inapplicable to a pro se administrative filing.[11]

## III. CONCLUSION

For the reasons provided, the State Defendants' Motion to Dismiss, ECF Nos. 20, 27, must be **granted**. Dickten Masch's Motion for Preliminary Injunction, ECF No. 12, is **denied as moot**. The above-entitled action is **dismissed**.

**IT IS SO ORDERED.**

---

11. Abstention pursuant to Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), also appears applicable in this case, though unnecessary given the Court's ruling. District courts may decline to exercise jurisdiction based on "concern for comity and federalism" in federal actions involving parallel state criminal prosecutions or certain civil enforcement proceedings. New Orleans Pub. Serv., Inc., v. Council of City of New Orleans, 491 U.S. 350, 367–68, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). These comity and federalism concerns are most acute for civil proceedings that implicate important state interests, such as those "necessary for the vindication of important state policies." Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). State administrative proceedings aimed at identifying and remedying unlawful employment discrimination, such as the ICRC investigation at issue here, often qualify for Younger abstention. See Ohio Civ. Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 628, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); Sirva Relocation, LLC v. Richie, 794 F.3d 185, 193 (1st Cir.2015). Other relevant factors include whether the state proceeding is "judicial in nature" and whether the party opposing abstention has an opportunity to raise federal defenses in the state proceeding. Middlesex, 457 U.S. at 433–35, 102 S.Ct. 2515. Proceedings before a state civil rights commission may be judicial in nature, Ohio Civ. Rights Comm'n, 477 U.S. at 627–28, 106 S.Ct. 2718, and Dickten Masch has already raised federal defenses in the state proceeding.

Dickten Masch raises two arguments in opposition to Younger abstention. First, Dickten Masch argues that the State of Iowa possesses no legitimate interest in the dispute because Cooper's Complaint only raises an ERISA claim, and thus does not implicate any interest the State may have in eliminating disability discrimination in employment. Dickten Masch also argues that an exception to abstention applies where a "facially conclusive claim of preemption" exists in the federal action. Dickten Masch MTD Opp. at 12, ECF No. 28 (quoting New Orleans Pub. Serv., Inc., 491 U.S. at 367, 109 S.Ct. 2506). Both arguments, however, are simply a reprise of the untenable reading of Cooper's Complaint rejected above.